Edward Charles DAVIS, III,
Plaintiff-Appellant,

v.

Edgar PAUL, Chief of Police, Louisville
Division of Police, and Russell McDaniel, Chief of Police, Jefferson County
Police, Defendants-Appellees.

No. 74-1225.

United States Court of Appeals,
Sixth Circuit.

Argued June 5, 1974.

Decided Oct. 22, 1974.

Daniel T. Taylor, III, Kentucky Civ. Liberties Union, William H. Allison, Jr., Robert Sedler, Lexington, Ky., for plaintiff-appellant.

Frank A. Logan, Asst. Director of Law, City of Louisville, John R. Wilson, Irvin D. Foley, Louisville, Ky., for defendants-appellees.

Before PHILLIPS, Chief Judge, and CELEBREZZE and ENGEL, Circuit Judges.

PHILLIPS, Chief Judge.

Appellant, Edward Charles Davis, III, brought this class action under 42 U.S.C. § 1983 alleging that the distribution by the Chiefs of Police of the Louisville and Jefferson County Police Departments of a flyer captioned "Active Shoplifters" and containing the names and mugshots of persons who have never been convicted of shoplifting violated the Due Process Clause of the Fourteenth Amendment. Appellant seeks declaratory, injunctive and monetary relief. The District Court dismissed the complaint, holding that it did not allege any violation of rights guaranteed by the Constitution. We reverse.

The complaint asserts that on June 14, 1971, Edward Charles Davis, III, was arrested in Louisville, Kentucky, on a

charge of shoplifting. It is alleged, and attachments to the complaint show, that he entered a plea of not guilty and that the charge was "filed away" on September 21, 1971, and dismissed on December 11, 1972. It is further alleged that appellant is innocent of the charge and that he was never tried or convicted of the offense.

The complaint alleges that on December 5, 1972, Col. Edgar Paul, Chief of Police of the Louisville Division of Police, and Col. Russell McDaniel, Chief of Police of the Jefferson County Police (hereinafter Police Chiefs), caused to be sent flyers to numerous merchants and business establishments in the Louisville Metropolitan area. It is alleged, and attachments to the complaint show, that the flyers contained the names and mugshots of persons who had been arrested for shoplifting during 1971 and 1972 or who were active in various criminal fields in high density shopping areas, that each flyer was headed by the caption "Active Shoplifters" and that the stated purpose of the flyer was to allow the merchants to inform their security personnel "to watch for these subjects."[1] Appellant's name and mugshot were included in the flyer. It is alleged that the acts of the Police Chiefs were under color of the state law and deprived the appellants and others similarly situated of rights guaranteed by the Due Process Clause of the Fourteenth Amendment.

The Police Chiefs moved to dismiss for lack of subject matter jurisdiction. The District Court dismissed the complaint stating: "The facts alleged in this case do not establish that plaintiff has been deprived of any right secured by the Constitution of the United States."

On considering an appeal from an order granting a motion to dismiss, we must, of course, take the allegations in the complaint as true. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 515–516, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

Before recovery can be allowed under § 1983, two elements must be present.

"First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage of any State or Territory.' This second element requires that the plaintiff show that the defendant acted 'under color of law.' " (Footnote omitted) Adickes v. S. H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

The sole issue on appeal, as it was in the District Court, concerns the first two elements set forth in the preceding paragraph. Specifically, the Police Chiefs contend that the complaint only states a cause of action for defamation and does not establish a constitutional deprivation.[2] Appellant contends that the complaint sets forth facts showing a deprivation of due process as guaranteed by the Fourteenth Amendment. Specifically, appellant contends that the Due Process Clause prohibits the Police Chiefs from disseminating "to large segments of the public, flyers containing

1. At the hearing on the motion for a preliminary injunction, Col. Paul testified that this practice had been going on about fifteen years, that the sole justification for including a person in the flyer is the fact of an arrest and information supplied by the arresting officer, that appellant's only prior arrest was in 1967 for a speeding violation and that about 800 of the flyers had been distributed.

2. "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked" Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).

the names and photographs of persons who have been arrested for, but not convicted of, the offense of shoplifting and describing these persons as 'active shoplifters,' together with persons who have been convicted of the offense." At oral argument, counsel for appellant stressed that the heart of the deprivation was the use of the label "active shoplifter."

We are of the view that appellant has set forth a claim cognizable under § 1983 in that he has alleged facts that constitute a denial of due process of law. This holding is mandated in view of Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

In *Constantineau,* the question presented to the Supreme Court involved the constitutionality of a Wisconsin statute which provided that designated persons could in writing forbid the sale or gift of intoxicating liquors to excessive drinkers who exhibited specified traits or produced described conditions. The statute did not provide for notice and hearing. The Chief of Police, pursuant to the statute and without notice or hearing, caused to be posted a notice at all retail liquor outlets in the town that sales or gifts of liquor to Constantineau were forbidden for one year. The precise issue presented to the Court was "whether the label or characterization given a person by 'posting,' though a mark of serious illness to some, is to others such a stigma or badge of disgrace that procedural due process requires notice and an opportunity to be heard." 400 U.S. at 436, 91 S.Ct. at 509. In holding that due process was required, the Court stated:

"Yet certainly where the State attaches 'a badge of infamy' to the citizen, due process comes into play. Wieman v. Updegraff, 344 U.S. 183, 191 [73 S.Ct. 215, 218–219, 97 L.Ed. 216.] '[T]he right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.' Anti-Fascist Committee v. McGrath, 341 U.S. 123, 168 [71 S.Ct. 624, 646, 95 L.Ed. 817] (Frankfurter, J., concurring).

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. 'Posting' under the Wisconsin Act may to some be merely the mark of illness, to others it is a stigma, an official branding of a person. The label is a degrading one. Under the Wisconsin Act, a resident of Hartford is given no process at all. This appellee was not afforded a chance to defend herself. She may have been the victim of an official's caprice. Only when the whole proceedings leading to the pinning of an unsavory label on a person are aired can oppressive results be prevented." 400 U.S. at 437, 91 S.Ct. at 510.

In the teeth of the plain language of the Court's holding, the Police Chiefs seek to distinguish *Constantineau* on the basis of an artificial distinction between "liberty" and "property" rights. It is contended that the thrust of the holding was based on the denial of a property right, i. e., the ability to purchase liquor. We do not read the opinion of the Supreme Court to support any such distinction. The Court has rejected the distinction between interests in "liberty" and "property" in the context of a due process deprivation. Board of Regents v. Roth, 408 U.S. 564, 569–575, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

In *Roth,* the Court reaffirmed its holding in *Constantineau* and emphasized that when interests in liberty are involved, due process is required. Although the Court did not undertake to define liberty in precise terms, it was stated that its meaning must "[w]ithout doubt, . . . [denote] not merely freedom from bodily restraint," and "must be broad indeed." 408 U.S. at

572, 92 S.Ct. at 2706. There is no question that the acts complained of in the case at bar constitute a denial of an interest in liberty. As stated by the Court in *Roth:*

"The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' Wisconsin v. Constantineau, 400 U.S. 433, 437, [91 S.Ct. 507, 510, 27 L.Ed.2d 515]; Wieman v. Updegraff, 344 U.S. 1839, 191 [73 S.Ct. 215, 219, 97 L.Ed. 216]; Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123 [71 S.Ct. 624, 95 L.Ed. 817]; United States v. Lovett, 328 U.S. 303, 316–317, [66 S.Ct. 1073, 1079, 90 L.Ed. 1252]; Peters v. Hobby, 349 U.S. 331, 352, [75 S.Ct. 790, 801, 99 L.Ed. 1129] (Douglas, J., concurring). See Cafeteria Workers v. McElroy, 367 U.S. 886, 898 [81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230]. In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's 'good name, reputation, honor, or integrity' is at stake.

"Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." (Footnote omitted.) 408 U.S. at 573, 92 S.Ct. at 2707.

In the case at bar, appellant alleges that he and others have been branded as active shoplifters—common criminals—and grouped together with those who have been convicted of crimes. This label carries with it the badge of disgrace of a criminal conviction. Moreover, it is a direct statement by law enforcement officials that the persons included in the flyer are presently pursuing an active course of criminal conduct. All of this was done without the slightest regard for due process. There was no notice nor opportunity to be heard prior to the distribution of the flyer, and appellant and others have never been accorded the opportunity to refute the charges in a criminal proceeding. It goes without saying that the Police Chiefs cannot determine the guilt or innocence of an accused in an administrative proceeding. Such a determination can be made only in a court of law.

The harm is all the more apparent because the branding has been done by law enforcement officials with the full power, prestige and authority of their positions. There can be little doubt that a person's standing and associations in the community have been damaged seriously when law enforcement officials brand him an active shoplifter, accuse him of a continuing course of criminal conduct, group him with criminals and distribute his name and photograph to the merchants and businessmen of the community. Such acts are a direct and devastating attack on the good name, reputation, honor and integrity of the person involved. The fact of an arrest without more may impair or cloud a person's reputation. Michelson v. United States, 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Such acts on the part of law enforcement officials may result in direct economic loss and restricted opportunities for schooling, employment and professional licenses. Menard v. Mitchell, 139 U.S.App.D.C. 113, 430 F.2d 486, 490 (1970).

In the present case, appellant was a photographer for the Louisville-Courier Journal at the time of the flyer's dissemination. At the hearing on the mo-

tion for a preliminary injunction, his supervisor testified as follows:

> "Our photographers must be accepted as a reasonably honorable and truthful man wherever they go. I felt that in view of this flyer's circulation to merchants of the community I could not, for example, assign Mr. Davis to photographing anything in a mercantile establishment and so that should such an assignment come up I would have been forced to have someone else cover that assignment rather Mr. Davis."

His supervisor also stated appellant "had best not find himself in a similar situation" again and that he would "view very seriously" a subsequent arrest.

"The mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct. An arrest shows nothing more than that someone probably suspected the person apprehended of an offense." (Footnote omitted.) Schware v. Board of Bar Examiners, 353 U.S. 232, 241, 77 S.Ct. 752, 757, 1 L.Ed.2d 796 (1957). In Schware the Court found a denial of due process when a state denied an applicant a license to practice law based on reasons that had no probative value. Id. at 246–247, 77 S.Ct. 752. Part of the Board's evidence was based on prior arrests for which the applicant had never been tried or convicted. Id. at 241–243, 77 S.Ct. 752.

Similarly, law enforcement officials cannot, consistent with the Due Process Clause, brand a person as an active shoplifter when he has never been tried for the offense. There is no rational basis to presume guilt and active criminality from the mere fact of an arrest.

While "[p]rocedure by presumption is always cheaper and easier than individualized determination," it cannot stand when it results in the deprivation of a protected interest without a meaningful opportunity to rebut the presumption. Stanley v. Illinois, 405 U.S. 645, 656–657, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551 (1972).

Few things are as fundamental to our legal system as the presumption of innocence until overcome by proof of guilt beyond a reasonable doubt at a fair trial. The dissemination of the flyer in the case at bar is in the face of the presumption of innocence, disregards the Due Process Clause and is based on evidence that is not probative of guilt.

Condemning a man to a suspect class without a trial and on a wholly impermissible standard, as in the case at bar, offends the very essence of the Due Process Clause, i. e., protection of the individual against arbitrary action. Slochower v. Board of Education, 350 U.S. 551, 559, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Peters v. Hobby, 349 U.S. 331, 351–352, 75 S.Ct. 790 (1955) (Douglas, J., concurring.) As said by Mr. Justice Black in his concurring opinion in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 144–145, 71 S.Ct. 624, 634 (1951):

> "Our basic law, however, wisely withheld authority for resort to executive . . . condemnations and blacklists as a substitute for imposition of legal types of penalties by courts following trial and conviction in accordance with procedural safeguards of the Bill of Rights." (Footnote omitted.)

Reversed and remanded for proceedings not inconsistent with this opinion.