John M. URBAN, Individually and as a member of a class composed of persons similarly situated, Plaintiffs,

v.

Harold BREIER, Chief of Police, City of Milwaukee Police Dept., Defendant.

No. 75–C–84.

United States District Court, E. D. Wisconsin.

Aug. 5, 1975.

Memorandum and Order imposing permanent injunctive relief Sept. 22, 1975.

Alan D. Eisenberg, Milwaukee, Wis. (James A. Walrath, Milwaukee, Wis., on behalf of Wisconsin Civil Liberties Union Foundation, as amicus curiae), for plaintiffs.

Thomas B. Hayes and Grant F. Langley, Asst. City Attys., Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This is an action whereby the named plaintiff, John M. Urban, sues on behalf of himself and a class of 53 others, allegedly similarly situated, to obtain certain preliminary and permanent injunctive relief. The complaint is directed against Harold Breier, Chief of the City of Milwaukee Police Department; it charges that he, together with his officers and agents, has conducted and continues to maintain various practices and policies under color of state law which are violative of certain provisions of the United States Constitution.

The action arises under section one of the Civil Rights Act of 1871, 42 U.S.C. § 1983. The jurisdiction of this Court has been invoked under the provisions of 28 U.S.C. § 1343.

On February 20, 1975 the plaintiffs filed their complaint in this matter, together with a motion for preliminary injunctive relief. A hearing was held on March 3, 1975, at which time counsel for each party were allowed to present testimony and oral argument in support of their respective positions. A series of written briefs have been submitted by counsel for the plaintiffs and the defendant. The Wisconsin Civil Liberties Union Foundation has been granted leave to appear as amicus curiae, and has filed a brief as well.

After due consideration of the documents that constitute the written record in this case and the testimony and oral argument that has been heard, the Court finds that the relief requested by these plaintiffs is to be substantially granted and that the opposition thereto is without merit, all in accordance with the terms of the following memorandum opinion.

### I.

A review of the record described above reveals that the following factual circumstances create the background to this suit:

On November 5, 1974, a young Milwaukee newspaper carrier was killed by a bomb placed in a box and left upon a parked automobile. The bomb was ostensibly intended as retaliation against the owner of the vehicle, a member of a local motorcycle "gang" or club who had recently testified against other members of a rival motorcycle gang.

Whatever the actual motive of the individuals responsible for this homicide, the Milwaukee Police Department had reason to suspect that the explosion was the work of one or several members of a motorcycle gang known as the Milwaukee Outlaws. During the several days following this incident, the Milwaukee police arrested some 54 known or suspected members of the Outlaws, including the plaintiff named above. Each of those arrested was booked for the murder of this boy and interrogated at length concerning his involvement with the case. The plaintiffs assert that none of these arrests was supported by the probable cause required by the fourth amendment to the United States Constitution.

Subsequent to this "dragnet" arrest operation, the Milwaukee Police Department printed a small leaflet containing the name and photograph of each of the 54 persons that had been taken into custody. Each of the six pages in this leaflet bears the boldface heading, "MILWAUKEE POLICE DEPARTMENT— KNOWN MEMBERS—MOTORCYCLE

GANGS." The last of the six pages adds that:

"THIS LIST IS NOT TO BE CONSIDERED AS AN AUTHORIZATION FOR ARREST.

"Any additional information about the subjects such as autos, associates, addresses, etc., should be forwarded to the Det. Bur. [The Milwaukee Police Detective Bureau]

"If subjects are stopped, use caution as many of the subjects use drugs & are armed.

"Dec., 1974"

The individuals pictured in this leaflet are each shown by a "mug-shot" photograph—front and right side view—under which appears a name, birth date and police identification number.

The testimony has established that approximately 2,100 of these leaflets were printed and distributed. Although primarily intended for use within the Milwaukee Police Department, it is undisputed that a substantial number of these brochures have been given to other law enforcement agencies in the Milwaukee area. No evidence of public display has been presented.

The 54 individuals that were subjected to this mass arrest procedure and later pictured in the Milwaukee police brochure have brought this action in an effort to obtain two principal types of relief. They seek an order to enjoin further distribution of the leaflet that has been printed and to require that those that have been distributed be recalled and destroyed. In addition, they seek an order to expunge whatever records may have resulted in either local or federal files as a result of the allegedly unlawful arrest procedure.

## II.

As an initial matter, this Court must resolve the issue of whether this action may proceed as a class action. The named plaintiff may clearly sue on his own behalf—whether he may sue on behalf of the other 53 persons he purports to represent is a matter governed by the terms of Rule 23, Federal Rules of Civil Procedure.

■ It is generally thought that the burden of proving that an action is properly maintainable as a class action is upon the party so urging. The complaint must set forth facts sufficient to show that the case complies with four criteria listed in Rule 23(a), and that it falls within one of the subsections of Rule 23(b). *See:* 7A Wright and Miller, Federal Practice and Procedure: Civil § 1798, cases cited at p. 242 (1972 ed.).

■■ Fairly read and liberally construed, it is apparent that the complaint here meets the four-pronged test of Rule 23(a). Because of the number and transient nature of the members of this purported class, joinder of all 54 would be quite impractical; because the defendant and his agents have taken action against all 54 members in a similar fashion, there are questions of law common to the class; because it is asserted that no probable cause existed for any of these arrests, and because no procedural formalities were observed prior to the publication of this leaflet, the claims of the representative party are typical of the claims of the class; because there is no conflict of interest between the named plaintiff and the other individuals similarly situated, it appears that the representative party will fairly and adequately protect the interests of the class —clearly the quality of the presentation of their case has been adequate to date. The fact that each of these criteria are not set forth with specificity on the face of the complaint is not a matter of great concern at this time. 7A Wright & Miller, *supra,* Civil § 1798; *Banks v. Lockheed-Georgia Co.,* 46 F.R.D. 442 (N.D.Ga., 1968).

Where, as here, the party opposing the class has acted or refused to act on grounds generally applicable to the class, and where, as here, final injunctive relief is sought, the action may proceed under Rule 23(b)(2) as alleged in the

complaint. This provision of Rule 23 is thought to be particularly appropriate in an action to complain of civil rights violations such as are at issue here. 7 and 7A Wright & Miller, *supra* Civil §§ 1771, 1776.

In view of the foregoing, the Court will order that this action proceed as a class action; the class of plaintiffs is to encompass the 54 individuals named and pictured on the leaflet printed by the Milwaukee Police Department, attached as Exhibit "A" to the complaint. *Cf: Sullivan v. Murphy,* 380 F.Supp. 867 (D.C.D.C., 1974) [Class action status permitted as to mass arrestees, where sufficiency of probable cause was at issue].

The Court is cognizant of the fact that no attempt has been made to notify each member of this class as to the pendency of this action. While the terms of Rule 23 itself do not require notice to be given when a class action is brought under section (b)(2), some courts have held that such is necessary as a matter of due process. *See, e. g. Schrader v. Selective Service System Local Board No. 76 of Wisconsin,* 470 F.2d 73 (7th Cir. 1972), *cert. denied* 409 U.S. 1085, 93 S.Ct. 689, 34 L.Ed.2d 672 (1972).

The Court notes that many authorities question whether due process requires notice to every would-be class member in an action proceeding under section (b)(2). *See:* 3b Moore's Federal Practice ¶ 23.55, at p. 23–1152 (1974 ed.); 7A Wright & Miller, *supra*, Civil §§ 1786, 1793. Where the alleged class includes persons whose whereabouts are often unknown and unascertainable, as in this case, notice of any type would appear to be futile.

The Court feels that the discretionary notice provisions of Rule 23(d)(2) are within that variable concept of due process, and that this action may proceed without notice to each individual class member being effected. *See, e. g., Watson v. Branch County Bank,* 380 F.Supp. 945 (W.D.Mich., 1974). To rule otherwise would effectively deprive these persons of the benefit of this litigation. In view of the fact that they would have no opportunity to "opt out" in any event, and because their interests are adequately protected, the Court concludes that they may be appropriately considered parties at this time. *Cf.: Eisen v. Carlisle & Jacquelin, et al.,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

### III.

The defendant appears to contend that this Court should bow to considerations of comity and federalism, and refrain from interfering with the Wisconsin criminal justice system in the manner urged by these plaintiffs. While, as a general proposition, the Court would stand in full accord with such principles, it must find the defendant's reliance thereon to be inappropriate in the context of this case.

Unlike *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), there is no pending criminal prosecution here with which this Court would interfere. Even the most liberal interpretation of the prohibitions articulated in *Younger* require some good-faith criminal action in progress in the state courts. *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (decision entered June 24, 1975). The testimony clearly indicates that no state prosecution is contemplated at this time.

Unlike *Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971), this action is not concerned with "flimsy allegations" or "speculations about the future"—the plaintiffs here complain about deprivations that are all too real for them; they are not merely attacking possible police action under a questionable statutory scheme.

The Court finds the principles of comity and federalism articulated in *Younger, Boyle* and *Hicks* to be inapplicable to the circumstances with which this case is concerned, and will proceed to consider the merits of the prayers for relief presented here.

## IV.

The first principal claim relates to the 54 arrests that were made shortly after the events of November 5, 1974. At oral argument and on numerous occasions in their written briefs, plaintiffs' counsel have asserted that none of these arrests was effected with the probable cause required by the fourth amendment to the United States Constitution. From the testimony given, it would appear that the sole basis for the arrest of the named plaintiff was that he was observed at a tavern where members of the Milwaukee Outlaws were known to congregate.

■ Because the defendant nowhere denies that probable cause was lacking, and because no person has so much as attempted to show that any of the arrests were in fact based upon sufficient probable cause, the Court considers the absence of probable cause for these 54 arrests to be an uncontested fact. It is clear that probable cause must exist as the *sine qua non* of a lawful arrest. *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 478 F.2d 938, 965 (1963), *cert. denied* 414 U.S. 880, 94 S.Ct. 162, 38 L. Ed.2d 125 (1973); *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L. Ed.2d 1503 (1958); *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). There only remains to consider the remedy. *See* part V *infra.*

The second of the two principal claims relates to the leaflet that displays the name and photograph of these 54 individuals, as printed and distributed by the Milwaukee Police Department. The legal issues concerning this matter merit a more detailed analysis.

In *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), the United States Supreme Court decreed that no state could attach a "badge of infamy" to a person's good name, reputation, honor or integrity absent notice and an opportunity to be heard—due process of law within the meaning of the fourteenth amendment to the United States Constitution. The decision declared that absent such due process, a local law enforcement official had no power to publicly post a list of persons he deemed to be alcoholics and thereby deny them the right to purchase or otherwise obtain alcohol for a period of one year. A Wisconsin statute to the contrary was held to be unconstitutional.

In a situation very similar to the case at bar, the Sixth Circuit has ruled that local law enforcement officials may not compile and publicly disseminate a brochure naming certain individuals "active shoplifters," absent some judicial determination that such a label was warranted. A mere arrest for shoplifting was held to be insufficient. *Davis v. Paul*, 505 F.2d 1180 (6th Cir., 1974), *cert. granted*, 421 U.S. 909, 95 S.Ct. 1556, 43 L.Ed.2d 773 (1975).

■ The 54 people depicted in the leaflet at issue here are branded known members of motorcycle gangs; those who see the leaflet are warned that caution is' necessary because many of these people carry weapons and use drugs. The Court determines that such statements are serious affronts to the name and reputation of each of the 54 persons portrayed. The defendant has made no showing that there has been any impartial determination that these assertions are true. The plaintiff John Urban has stated under oath that he is not now and never has been a member of a motorcycle gang or club; he has sworn that he does not own a firearm and does not use or possess illegal drugs.

In view of the conclusions in *Constantineau* and *Davis,* this Court is of the opinion that these brochures are impermissible. Although, unlike *Davis,* these plaintiffs are not thereby charged with criminal conduct, the Court finds the blow to their reputation to be sufficient to meet the standards imposed by *Constantineau.* Although, unlike both *Constantineau* and *Davis,* there has been no evidence of display of this leaflet to members of the general public, the Court finds that the results reached in those cases are controlling here: it is

admitted that over 2,100 copies of this document have been published and circulated to persons in or around the communities in which many of these 54 individuals currently reside, and it would seem apparent that while the Milwaukee Police Department itself may restrict public access thereto, these brochures may be given to the general public by many of the other law enforcement agencies that have obtained them. Because distribution has been achieved on such a large scale, because the insinuations therein are so devastating to the reputation of the persons named, and because no showing has been made to indicate that any form of notice or opportunity to be heard was granted to these individuals, the Court concludes that these leaflets have been improperly prepared and unlawfully distributed.

" . . . [C]ertainly where the State attaches 'a badge of infamy' to the citizen, due process comes into play. *Wieman v. Updegraff,* 344 U.S. 183, 191, [73 S.Ct. 215, 218–219, 97 L.Ed. 216] '[T]he right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.' *Anti-Fascist Committee v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (Frankfurter, J., concurring).

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."

*Wisconsin v. Constantineau, supra,* 400 U.S. at 437, 91 S.Ct. at 510 (1973); *see too, Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

It is quite possible that the need for notice and hearing may be avoided if these law enforcement officers tailor the contents of their criminal identification materials to speak in a more neutral fashion, or if the scope of the distribu-

tion thereof is more strictly circumscribed. *See, e. g., Shirck v. Thomas,* 486 F.2d 691 (7th Cir., 1973). The Court is of the opinion, however, that the facts of this case are such as to prevent a finding that this leaflet is legally permissible.

"The harm is all the more apparent because the branding has been done by law enforcement officials with the full power, prestige and authority of their positions. There can be little doubt that a person's standing and associations in the community have been damaged seriously when law enforcement officials brand him an active shoplifter, accuse him of a continuing course of criminal conduct, group him with criminals and distribute his name and photograph to the merchants and businessmen of the community. Such acts are a direct and devastating attack on the good name, reputation, honor and integrity of the person involved." *Davis v. Paul, supra,* 505 F.2d at 1183.

Whether law enforcement officers charge that a person is an "active shoplifter" or that he is a "known member" of a motorcycle gang who is likely to use and carry weapons and drugs, this Court finds their large-scale distribution of unconfirmed data to be equally reprehensible. These plaintiffs have been denied the due process of law to which they are entitled under the provisions of the fourteenth amendment; there again remains only the task of constructing the appropriate remedy.

The plaintiffs urge that the relief they seek concerns issues of freedom of association as guaranteed by the first amendment, and the briefs filed both on their behalf and on behalf of the amicus curiae argue that certain of the defendant's activities and policies are violative of constitutional guarantees of privacy as derived from the first, fourth, fifth, ninth and fourteenth amendments.

█ It has long been thought that questions of constitutional law are to be resolved by rulings no broader than re-

quired by the precise facts to which they are to be applied. *See, e. g., Salandich v. Milwaukee County*, 351 F.Supp. 767, cases cited at p. 770 (E.D.Wis., 1972). In view of the fact that these plaintiffs obtain substantially all the relief they seek by virtue of the analysis of the requirements of due process of law, as set forth above, this Court need not consider the additional constitutional claims at this time.

### V.

The Court determines that, as to the unlawful arrests that occurred shortly after November 5, 1974, the proper preliminary remedy is to order all state and federal records thereof to be expunged. This order of expungement may be suspended or revoked at a later date if such a result is shown to be unwarranted.

Substantial authority supports the proposition that a federal court carries the equitable power to expunge arrest records of individuals in certain extraordinary circumstances. *See: United States v. Seasholtz*, 376 F.Supp. 1288 (N.D.Okl., 1974); *Kowall v. United States*, 53 F.R.D. 211 (W.D.Mich., 1971); *United States v. McLeod*, 385 F. 2d 734 (5th Cir., 1967); *Hughes v. Rizzo*, 282 F.Supp. 881 (E.D.Pa., 1968); *Wheeler v. Goodman*, 306 F.Supp. 58 (W.D.N.C., 1969), vacated on other grounds, 401 U.S. 987, 91 S.Ct. 1219, 28 L.Ed.2d 524 (1971). *See generally*, 46 A.L.R.3d 900 (1972).

While each case is to be examined under the peculiar facts at issue, it is commonly thought that expungement is justified in a situation where arrest records do not serve to protect society, where they will not aid future criminal investigation, and where future misuse thereof is likely. This is especially true in a case where extreme police misconduct is demonstrated. *Wheeler v. Goodman, supra*, 306 F.Supp. at p. 65.

The fact that none of the 54 arrests at issue here was accompanied by the requisite probable cause leads this Court to conclude that the records thereof serve no legitimate purpose in terms of either protection of society or facilitation of future criminal investigation. The "dragnet" style of arrest utilized by the Milwaukee Police Department, combined with the booking and interrogation processes presented here, cannot be sanctioned by this Court; they are far in excess of that investigative procedure which is constitutionally permissible. *Cf: Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) [Brief detention for purposes of obtaining fingerprints may be within constitutional limitations]. In addition it is apparent that a criminal record indicating a prior arrest for murder is an extremely heavy burden for any individual to bear. *See, e. g., Bilick v. Dudley*, 356 F.Supp. 945, 950 (S.D.N.Y., 1973) [Burden of arrest record for narcotics violation warrants expungement]. In view of the foregoing circumstances, the Court finds this case to be one of those unusual circumstances in which expungement is warranted. As a matter of preliminary relief, the defendant is to be ordered to remove the record of these 54 arrests from the file of each individual, on both the state and federal levels, and to recall and withhold the identification materials that were unconstitutionally obtained. *Cf: Menard v. Saxbe*, 162 U.S.App.D.C. 284, 498 F.2d 1017, 1022 (1974) [Fingerprint and arrest records are removed from F. B. I. files when the contributing agency so requests].

As to the brochure about which these 54 persons complain, the Court would note that the federal judiciary is thought to have broad equitable powers to remedy constitutional violations; such problems are said to be solely a matter of federal law:

"Assuming a determination of constitutional violations, it is undeniable that the Federal courts having subject-matter jurisdiction also have broad equitable power to remedy and obviate all traces of the constitutional

wrong. In discussing the 'historic equitable remedial powers' of the courts, to fashion 'equitable remedies to repair the denial of a constitutional right,' Chief Justice Burger, speaking for a unanimous Court, pointed out, *Swann v. Board of Education,* 402 U. S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed. 2d 554 (1971):

> 'Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.' "

*Sullivan v. Murphy,* 156 U.S.App.D.C. 28, 478 F.2d 938, 966 (1973), *cert. denied,* 414 U.S. 880, 94 S.Ct. 162, 38 L. Ed.2d 125 (1973), *on remand,* 380 F. Supp. 867 (D.C.D.C., 1974).

The Court has determined that the State of Wisconsin, through the defendant named here, has acted in violation of the fourteenth amendment to the United States Constitution; the Court now concludes that, in the unusual circumstances of this case, a preliminary exercise of equitable power is required to prevent the further distribution of these particular leaflets and to insure that those that have been disseminated are recalled and withheld to whatever extent it is within the power of this defendant to do so.

### VI.

The defendant urges that this Court reject the relief sought by these plaintiffs so as to enhance the ability of the police department to control what is said to be a " . . . dramatic increase in the occurrence of crime . . . "; he maintains that because distribution of the leaflet at issue here is limited to law enforcement personnel and law enforcement purposes, the constitutional protections invoked by these plaintiffs are to be disregarded:

> "Without the discretion to circulate information and to circulate such information widely among law enforce-

ment agencies and personnel, police agencies would be substantially handcuffed in their fight on crime."

Defendant's brief in reply to the amicus curiae brief, at p. 5.

The Court sympathizes with the Milwaukee Police Department and can appreciate the scope of the task of local law enforcement personnel as methods of criminal conduct become more sophisticated and better organized. However, the Court is of the opinion that the fact that the individuals comprising the plaintiff class may be thought to be of unsavory character is insufficient to warrant a suspension of the guarantees and prohibitions established by the United States Constitution as interpreted by the federal courts of this nation. The police are not to be permitted to act in derogation of established constitutional standards of conduct simply because an expeditious or thorough criminal investigation is thought to be necessary. The explosion and death described above appear to be both senseless and tragic, yet these facts alone cannot justify the resulting conduct on the part of those officials charged with the responsibility of bringing the guilty to justice.

> "Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retri-

bution. Against that pernicious doctrine this Court should resolutely set its face."

*Olmstead v. United States*, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928), Brandeis, J., dissenting.

For the reasons set forth in the preceding memorandum opinion, it is hereby ordered:

(1) That this action proceed as a class action under the provisions of Rule 23(b)(2), F.R.C.P., said class to include as plaintiffs all of the 54 persons who were arrested in conjunction with the homicide investigation described above and who were subsequently pictured on the Milwaukee Police Department brochure, attached as Exhibit A to the plaintiffs' complaint;

(2) That the arrests and seizures of the members of the class described in paragraph one of this order are declared invalid and unconstitutional, *provided* that the defendant be given 30 days from the date of this order to demonstrate adequate probable cause for any one or more thereof;

(3) That the defendant, on behalf of the Milwaukee Police Department and all divisions, units, sections and personnel thereof, shall within 45 days of the date of this order provide this Court with affidavits or other satisfactory evidence to demonstrate that there has been a recall of all records, recordings, reports, memoranda, cards or writings of any kind, and all copies of the foregoing without exception, that would in any way relate, inform or reflect that any member of this class had been arrested or booked for the murder of the newspaper carrier killed as described above on November 5, 1974; said records will include all fingerprint data taken and/or photographs made as a result of these arrests;

(4) That the defendant, on behalf of the Milwaukee Police Department and all divisions, units, sections and personnel thereof, shall within 45 days of the date of this order provide this Court with affidavits or other satisfactory evidence to demonstrate that notice has been given all agencies and persons, governmental or private, including the Federal Bureau of Investigation, to whom there was sent a record of the arrest, fingerprint card, photograph, or any other information whatsoever indicating a seizure, arrest or charge resulting from the homicide at issue here; said notice will indicate that these seizures were without legally sufficient basis, will request such agencies or persons to return all records, fingerprint cards or photographs derived from these arrests, and will ask that no copies thereof and no records whatsoever be retained to indicate that these arrests occurred;

(5) That the defendant shall, within 45 days of the date of this order, provide this Court with affidavits or other satisfactory evidence to demonstrate that all copies of the leaflet at issue here, attached as exhibit A to the plaintiffs' complaint, have been removed from circulation within the Milwaukee Police Department and all its divisions, units, sections and personnel, and that said leaflets have been withheld and will not be reprinted or distributed in the future;

(6) That the defendant shall, within 45 days of the date of this order, provide this Court with affidavits or other satisfactory evidence to demonstrate that notice has been given all agencies and persons, public and private, who have received copies of the leaflet described above; said notice will indicate that these leaflets are to be returned to the Milwaukee Police Department, and that no copies thereof are to be retained or utilized for any purpose whatsoever; and

(7) That the costs and attorneys' fees incurred in the prosecution of this action be borne by the individual parties sustaining them.

Because the hearing on this motion for preliminary injunctive relief included extensive testimony and argument,

and because the written briefs submitted by all parties and the Wisconsin Civil Liberties Union Foundation deal with the legal issues presented here in such a thorough fashion, it would appear to the Court that no legal or factual questions remain at this time. While the Court would therefore exercise the power granted by Rule 65(a)(2), F.R.C.P., to consolidate the hearing on the application for preliminary relief with the trial on the merits in this action, the Court feels that such an order is inappropriate absent an opportunity for the parties to voice an objection thereto. *See,* 11 Wright & Miller, *supra,* Civil § 2950 at p. 489.

It is therefore further ordered that cause be shown within 30 days of the date of this order, if at all, as to why the trial on the merits in this action should not be consolidated with the hearing on the preliminary injunction that was held, why this preliminary injunction should not be made permanent, why the documents and records described above should not be ordered destroyed, and why this memorandum opinion should not constitute final findings of fact and conclusions of law.

## MEMORANDUM AND ORDER IMPOSING PERMANENT INJUNCTIVE RELIEF

On August 5, 1975, this Court entered a memorandum and order granting certain preliminary injunctive relief in favor of the class of plaintiffs named above; pursuant to said order, a hearing was held approximately 30 days thereafter to permit counsel for the defendant to show cause why a permanent injunction should not be issued. After due consideration of the oral argument presented at that hearing, as supplemented by the written materials that have subsequently been filed, the Court concludes that no deviation from the August 5 decision is warranted. That order is to be enforced, as written, and made final in accordance with the terms of the following memorandum opinion.

I.

Counsel for the defendant argue that the Court should reconsider the preliminary injunction that has been entered here, and modify it at several critical points:

 (1) While they candidly admit that no sufficient showing of probable cause supported any of the 54 arrests about which the plaintiffs complain, defendant's counsel urge that the Milwaukee Police Department be allowed to retain fingerprints and photographs derived from these arrests so long as such information is stored in a neutral identification file devoid of reference to suspected criminal conduct. In support of this position, much reliance is placed on *Menard v. Saxbe,* 162 U.S.App.D.C. 284, 498 F.2d 1017 (1974).

In *Menard,* the United States Court of Appeals for the D. C. Circuit ordered certain criminal arrest records to be expunged, but allowed the Federal Bureau of Investigation to catalogue the data derived therefrom in its non-criminal (neutral) identification file. *Menard v. Saxbe, supra,* 498 F.2d at pp. 1028, 1030. The Court finds the situation described in *Menard* to be distinguishable from that presented here in at least two significant respects, and, for this reason, chooses not to act in a similar fashion.

First, the Court notes that the *Menard* case was concerned with a single detention of a particular individual in connection with an inquiry relating to a stolen billfold. That is far from the case where 54 persons have been arrested and booked for murder. The risks inherent in the latter situation are sufficiently severe to require that this Court firmly preclude the possibility of a continuing link between this class of individuals, or any of them, and the crime for which they have been unlawfully arrested and interrogated.

Secondly, and more importantly, representatives of the Milwaukee Police Department have stated that said organization has no such neutral identification

file whatsoever at the present time. This is far from the situation in *Menard* where the court was concerned with a rather large and well-established index at F.B.I. national headquarters.

The Court will not permit the Milwaukee Police Department to begin and possibly end their "neutral" file with these 54 persons. The devastating blow to the reputation of these people, should criminal inferences of this nature somehow be maintained, is sufficiently severe to warrant a departure from the provisions of *Menard v. Saxbe, supra,* in this case.

(2) Defendant's counsel also contend that because legitimate warrants were outstanding when six of the persons in this class of plaintiffs were arrested, records derived from these six arrests should be excepted from any injunctive relief that is imposed.

Counsel apparently misconstrue the nature of the preliminary injunction that has issued; by its very terms, this result has in fact been accomplished. The order of August 5, at part VI–(3) is directed to "records, recordings, reports, memoranda, cards or writings of any kind . . . that would in any way relate, inform or reflect that any member of this class had been arrested or booked for the murder . . . described above . . . ." Arrest records derived from or referring to other charges are clearly excluded from the thrust of this injunction.

(3) Defendant's counsel again urge that no "motorcycle gang" identification brochures be recalled from those organizations that have prepared, distributed and received them; they contend that the fact that no actual public display has been proven here serves to distinguish this case from *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed. 2d 515 (1971), and *Davis v. Paul,* 505 F. 2d 1180 (6th Cir., 1974), *cert. granted* 421 U.S. 909, 95 S.Ct. 1556, 43 L.Ed.2d 773 (1975).

For the reasons set out in the August 5 opinion, the Court disagrees.

II.

Now therefore, it is ordered that the trial on the merits of this action be and is hereby consolidated with the hearing on the preliminary injunction that was held;

It is further ordered that the preliminary injunction entered on August 5, 1975 is made permanent, and that the named defendant together with his officers, agents, employees, attorneys and all those acting in concert with them, destroy the identification materials described in said opinion, in accordance with the terms of the order of August 5, and submit affidavits or other satisfactory evidence to demonstrate that this has been accomplished, all no later than October 6, 1975;

It is further ordered that the memorandum and order entered August 5, 1975 constitutes this Court's final findings of fact and conclusions of law.