*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0149p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JOHN DOE,

          *Plaintiff-Appellant,*

     *v.*

BEVERLY BRILEY, et al.,

          *Defendants,*

TENNESSEE BUREAU OF INVESTIGATION;
METROPOLITAN GOVERNMENT OF NASHVILLE
& DAVIDSON COUNTY,

          *Defendants-Appellees,*

GANNETT SATELLITE INFORMATION
NETWORK, INC. d/b/a THE TENNESSEAN;
NEWSCHANNEL 5 NETWORK, L.P.,

          *Intervenors-Appellees.*

No. 07-6300

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 73-06971—Aleta Arthur Trauger, District Judge.

Argued: December 11, 2008

Decided and Filed: April 16, 2009

Before: BOGGS, Chief Judge; KETHLEDGE, Circuit Judge; THAPAR, District Judge.[*]

_____

## COUNSEL

**ARGUED:** James F. Blumstein, VANDERBILT LAW SCHOOL, Nashville, Tennessee, for Appellant. Allison L. Bussell, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, Lyndsay Fuller, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees. **ON BRIEF:** James F. Blumstein, VANDERBILT LAW SCHOOL, Nashville, Tennessee, for Appellant. Allison L. Bussell, Keli J. Oliver, METROPOLITAN DEPARTMENT OF LAW, Nashville,

---

[*]The Honorable Amul Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Tennessee, Lyndsay Fuller, Michael A. Meyer, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.  Alfred H. Knight, Alan D. Johnson, WILLIS & KNIGHT, Nashville, Tennessee, Ronald G. Harris, Jon D. Ross, NEAL & HARWELL, Nashville, Tennessee, for Intervenors.

_____

**OPINION**

_____

KETHLEDGE, Circuit Judge.  Plaintiff appeals the district court's order vacating a 34-year-old consent decree that proscribed the publication of certain arrest records. We agree with the district court that subsequent caselaw has swept away the decree's constitutional foundation.  We therefore affirm.

I.

This case comes to us after lying dormant for a generation.  On April 12, 1973, Plaintiff John Doe ("Doe") sued several officials of the Metropolitan Government of Nashville and Davidson County ("Metro"), and the director of the Tennessee Bureau of Investigation ("TBI"), all in their official capacities (collectively, "Defendants").  Doe's complaint alleged that the due-process rights of persons who were arrested, but not charged with or convicted of crimes, were violated by Defendants' "maintenance and/or dissemination of" their arrest records.  Doe sought injunctive relief and a declaration that the practice of maintaining and disseminating "raw" arrest records is unconstitutional.

The suit came during what proved to be a period of confusion regarding whether the Constitution (as opposed to only state defamation law) protects a stand-alone liberty interest in one's reputation.  The Supreme Court's decision in *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), appeared to suggest that it does.  The Court's decision five years later in *Paul v. Davis*, 424 U.S. 693 (1976), emphatically made clear that it does not.  The consent decree at issue here was entered during the time between the two decisions.

Doe's suit actually yielded two decrees.  The first, entered on September 10, 1973, (the "1973 decree") forbids Metro from "inquiring about, obtaining, or using any

information regarding any arrests which have not resulted in a criminal trial or conviction . . . when considering applicants for employment with the Metropolitan Government or the Metropolitan Board of Education[.]"  That decree remains in effect and is not challenged here.  The second  (the "1974 decree"), is the subject of this appeal.  Entered on March 22, 1974, it enjoined Metro and the State of Tennessee from providing arrest records of persons "who [were] not convicted of the charges upon which the arrest was predicated" to anyone other than "law enforcement agencies for official law enforcement purposes."  It also required the State of Tennessee to update Metro's arrest records regularly, and reserved jurisdiction in the Middle District of Tennessee "to assure compliance with this and any subsequent order."

The decrees then passed into a long period of quiescence.  There were stirrings in 2004, however, when the Tennessee General Assembly enacted Tenn. Code Ann. § 38-6-120, which expressly permits TBI to provide raw arrest records to anyone who makes a written request for them and pays a fee.  The Metro Police Department thereafter began posting on its website the names and mugshots of persons arrested for patronizing prostitutes.

Doe then reappeared to file a "Motion for Further Relief to Assure Further Compliance[,]" in which he cited the Metro website postings.  Doe did not seek a contempt order, but instead requested an order (i) requiring Defendants to comply with the 1974 decree, (ii) requiring Metro to shut down its website, and (iii) directing Defendants to perform a "detailed and comprehensive self-study to investigate its [*sic*] relevant practices and procedures[.]"  Two media outlets, Gannett Satellite Information Network, Inc., d/b/a *The Tennessean*, and News Channel 5 Network, L.P., moved to intervene in the case, arguing that the 1974 decree violated their statutory and constitutional rights to obtain arrest records.  The district court allowed the intervention. TBI and Metro thereafter filed separate motions to vacate the 1974 decree under Fed. R. Civ. P. 60(b).  The district court granted the motions and vacated the decree, finding that the legal theory on which the decree was based had been invalidated by subsequent caselaw.

This appeal followed.

II.

A.

Doe devotes the bulk of his brief to arguing, not that the decree remains valid in light of later caselaw, but that the district court should not have reached the merits of that question at all.  In this regard, Doe first argues that Defendants' Rule 60(b) motion was untimely.  "This aspect of the district court's discretion receives abuse-of-discretion review." *Assoc. Builders v. Mich. Dept. of Labor*, 543 F.3d 275, 278 (6th Cir. 2008).

As an initial matter, the district court was correct to analyze Defendants' Rule 60(b) motion under subsection (b)(5) of the Rule.  "Injunctions (permanent or temporary), some declaratory judgments, and particularly consent decrees are prospective judgments susceptible to a Rule 60(b)(5) challenge." *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 355 F.3d 574, 587 (6th Cir. 2004).  Under Rule 60(b)(5), the district court may dissolve a decree if, among other things, its prospective application "is no longer equitable." Fed. R. Civ. P. 60(b)(5).  A party bringing a motion under this subsection must do so "within a reasonable time." Fed. R. Civ. P. 60(c)(1).

The gist of Doe's argument is that the reasonable-time determination under Rule 60(c)(1) should depend entirely on the promptness with which a party brings the motion, to the exclusion, apparently, of any other consideration.  That narrow focus, of course, would yield a determination that Defendants' motions were untimely, since they were filed some 30 years after the Supreme Court decision upon which they principally rely.

But our caselaw takes a broader view.  In making the reasonable-time determination, we consider "the length of the delay, the explanations for the delay, the prejudice to the opposing party caused by the delay and the circumstances warranting relief." *Assoc. Builders*, 543 F.3d at 278.  Moreover—and importantly for our purposes here—we  consider "the nature of the dispute and whether it involves a purely private disagreement or a matter of public interest." *Id.*

These broader concerns make clear that the district court did not abuse its discretion in finding Defendants' motions to be timely. It is true enough that the motions were filed long after they could have been filed, and that Defendants' explanation for the delay—basically, that they had forgotten about the decree—is hardly compelling. But several countervailing concerns support the district court's determination. First, as explained below, "there has been a change in the law," *id.*, whose effect is that "[t]he foundation upon which the [decree] was built has crumbled." *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994) (*en banc*).

Second, "this case plainly implicates a matter of public concern[.]" *Assoc. Builders*, 543 F.3d at 278. As the involvement of the intervening news organizations illustrates, the decree affects the public's ability to access certain governmental information. Indeed, the decree would bar Intervenors, and anyone else in the public, from seeking to benefit from the 2004 enactment of Tenn. Code Ann. § 38-6-120. Moreover, a refusal on our part even to consider the merits of Defendants' Rule 60(b) motions, solely on the ground that the motions could have been brought sooner, would effectively "bind all future officers of the State"—including not least the Tennessee General Assembly—to the decree's proscriptions. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 392 (1992). And that, as the district court aptly observed, "would be a perverse and undemocratic state of affairs." 511 F.Supp.2d at 913.

Third, Doe has not identified even a shred of prejudice that he has suffered as a result of Defendants' delay. To the contrary, the only apparent consequence of the delay, so far as Doe is concerned, is that the decree remained in place for some 30 years longer than it probably should have. That is no reason to leave it in place forever, particularly in a case of public concern. We therefore reject Doe's argument that Defendants' motion was untimely.

Doe's other procedural argument is that the district court should have entered an order directing Defendants to comply with the decree, before considering whether to enter an order vacating it. But on this point as well, we entirely agree with the reasoning of the district court. It is true, as the district court recognized, that "a defendant to a

contempt proceeding may not challenge the validity of the underlying injunction as a defense to violating that injunction." *Id.* at 915. Doe concedes that he did not file a contempt motion, but contends that his "Motion for Further Relief to Assure Compliance" was close enough for purposes of this rule, and that the motion's omission of the word "contempt" is trivial. But Doe underrates the relevant distinction. That distinction concerns not merely the omission of a single word, but the difference between motions for retrospective and prospective enforcement of a decree. We agree with Doe that a Rule 60(b) motion seeking invalidation of an order would be no defense to a motion seeking to punish a defendant's *past* failure to comply with it. And we have some sympathy for Doe's claim that Defendants may have violated the 1974 decree with impunity. But Doe did not file a retrospective motion in the district court. Instead, as the district court correctly found, Doe's motion "seeks only *prospective* relief[,]" that is, compliance with the decree going forward. *Id*. at 916 (emphasis added). And whether the legal foundation of a decree remains valid—or whether, more to the point here, the Supreme Court has demolished that foundation—certainly is relevant to whether the decree should be enforced prospectively.

For similar reasons, Doe's reliance on *Gonzales v. Galvin*, 151 F.3d 526 (6th Cir. 1998), is misplaced. There, we observed that "a district court may not terminate its jurisdiction until it finds both that Defendants are in compliance with the decree's terms and that the decree's objectives have been achieved." *Id.* at 531. But that rule governs the question whether a decree remains "necessary to remedy" a prior violation of a duty arising under federal law. *Id.* at 531. This case concerns an antecedent question: namely, whether intervening caselaw has made clear that there was no such federal duty to violate in the first place. The district court properly reached that question; and now, so do we.

B.

We review a district court's decision to vacate a decree for an abuse of discretion. *Gonzales*, 151 F.3d at 531. Here, the district court vacated the decree pursuant to the rule that "modification of a consent decree may be warranted when the

statutory or decisional law has changed to make legal what the decree was designed to prevent." *Rufo*, 502 U.S. at 388.

We have applied that rule before. In *Sweeton*, our *en banc* court considered "whether a set of injunctions imposed by a consent decree may be dissolved if the old decree appears to be based on an earlier misunderstanding of the governing law[.]" 27 F.3d at 1163. The misunderstanding in *Sweeton* concerned the extent to which "federal due process standards govern[ed] state parole procedures," a question as to which "there was considerable confusion in the late 1970's when this class action was originally filed." *Id.* at 1164. The *Sweeton* decree was predicated, it appears, on the theory that "a state statute or regulation creating a purely procedural limitation concerning parole may also create a federal due process liberty interest or substantive right." *Id.* Several years after the decree was entered, however, the Supreme Court's decision in *Olim v. Wakinekona*, 461 U.S. 238 (1983), made clear that "state statutes and regulations governing prisoner hearings do *not* create an independent federal due process liberty interest or right in the prisoner[.]" *Sweeton*, 27 F.3d at 1164 (emphasis added). The state defendants thus moved to vacate the decree; and, given the change in the law, this court held that the district court abused its discretion by failing to grant the motion.

Doe's case is remarkably similar. Here too the decree was entered during a period of confusion with respect to the putative due-process right on which the decree was based. (Indeed, the confusion here was a first cousin to the confusion that underlay the decree in *Sweeton*.) Specifically, in 1971, the Supreme Court decided *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), in which it appeared to hold that reputation is a stand-alone liberty interest protected by the federal Constitution. Pursuant to a Wisconsin statute, Constantineau had been identified to local liquor outlets as a person to whom alcohol should not be sold for one year (allegedly because she was an alcoholic). *Id*. at 435. Over the dissent of four Justices, the Court held that the statute was unconstitutional, broadly reasoning that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id*. at 437. Not long thereafter, the parties to

this case stipulated to entry of the 1974 decree, which enjoined Defendants from disseminating the arrest records of persons "not convicted of the charges on which the arrest was predicated[.]"

Our court read *Constantineau* the same way the parties to this case did.  In *Davis v. Paul*, 505 F.2d 1180 (6th Cir. 1974)—decided exactly seven months after entry of the decree at issue here—Davis claimed that "the distribution by the Chiefs of Police of the Louisville and Jefferson County Police Departments of a flyer captioned 'Active Shoplifters' and containing the names and mugshots of persons" arrested but not convicted of shoplifting "violated the Due Process Clause of the Fourteenth Amendment." *Id.* at 1180.  Citing the "good name" passage quoted above, we held that vindication of Davis's claim "is mandated in view of *Wisconsin v. Constantineau*[.]" *Id.* at 1182.  In light of *Constantineau*, we said, "law enforcement officials cannot, consistent with the Due Process Clause, brand a person as an active shoplifter when he has never been tried for the offense." *Id.* at 1184.

The Supreme Court soon told us we were wrong.  In *Paul v. Davis*, 424 U.S. 693 (1976), the Court reversed our decision and held that "[n]one of [Davis's] theories of recovery were based upon rights secured to him by the Fourteenth Amendment." *Id.* at 713.  The Court distinguished *Constantineau* on the ground that "the governmental action taken in that case deprived the individual of a right previously held under state law[,]" namely, "the right to purchase or obtain liquor in common with the rest of the citizenry." *Id*. at 708.  The Court further explained, rather pointedly, that the resultant harm to Constantineau's reputation, "standing alone," had not deprived her "of any 'liberty' protected by the procedural guarantees of the Fourteenth Amendment." *Id*. at 709.  Turning to Davis's case, the Court flatly rejected his claim of "constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge." *Id*. at 713.

That rejection has large consequences here.  The Court's decision in *Paul* makes unmistakably clear that, in this case, "the legal theory and analysis upon which the consent decree was formulated was erroneous." *Sweeton*, 27 F.3d at 1164.  Doe's

fundamental problem is that the constitutional claim on which the 1974 decree was based is utterly indistinguishable from the claim rejected in *Paul.*  The cases are materially identical.  Doe does not contest that fact; and indeed nowhere in his brief does he argue that the conduct proscribed by the 1974 decree actually violates the Constitution.  He instead presents any number of arguments, some which have already been discussed, as to why the district court need not—or indeed *should* not—have faced that fact directly.

Our opinion in *Sweeton* refutes those arguments.  Here, as there, "[t]he foundation upon which the claim for injunctive relief was built has crumbled[,]" 27 F.3d at 1166; the "decisional law has changed so that the enjoined behavior, which once *might* have been a violation of federal law, is no longer a matter of federal law at all[,]" *id.* (emphasis added); and the decree "appears to be based"—indeed could *only* have been based—"on an earlier misunderstanding of the governing law[.]" *Id.* at 1163.  That was a misunderstanding we shared, such that *Paul* effected not merely a change in the law of this circuit, but literally a reversal of it.  In *Sweeton*, we reversed the district court for its *refusal* to vacate the decree; and here, taken together, *Sweeton* and *Paul* compel the conclusion that the district court did not abuse its discretion in vacating the 1974 decree.

Only one argument of significance remains.  Doe argues that the 1974 decree remains valid as a means of enforcing the 1973 decree, whose validity is not challenged here.  Citing *Rufo*, 502 U.S. at 389, Doe says the 1974 decree must be upheld if it is merely "related to" the 1973 decree's "ban" on the use of arrest data for purposes of governmental hiring.  Appellant Br. at 44.  But that is not quite the relation specified in *Rufo.*  It is not good enough that one decree is "related to" another decree.  What *Rufo* says is that a decree should be "related to the *conditions found to violate the Constitution.*"  502 U.S. at 389 (emphasis added).  That more immediate relation to the Constitution is completely absent with respect to the 1974 decree.  And otherwise, the proper way to enforce the 1973 decree is simply to enforce the 1973 decree.  If its terms prove inadequate to meet its lawful purposes, then Doe can move to modify it.

"Ongoing injunctions should be dissolved when they no longer meet the requirements of equity. . . . Neither the doctrines of *res judicata* or waiver nor a proper respect for previously entered judgments requires that old injunctions remain in effect when the old law on which they were based has changed." *Sweeton*, 27 F.3d at 1167. Such is the case here. The district court did not abuse its discretion in vacating the 1974 decree. And neither did it err in granting the motions to intervene.

The September 28, 2007 order of the district court is affirmed.