James Anthony SWEETON, et al., Plaintiffs–Appellees,

v.

Robert BROWN, Jr., et al., Defendants–Appellants.

Nos. 92–1441, 92–1581.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1993.

Decided July 1, 1994.

Paul D. Reingold, Nicholas J. Rine, Mark D. Mitshkun, Michigan Clinical Law Program, Ann Arbor, MI, Martin A. Geer (argued and briefed), Law Offices of Martin A. Geer, Detroit, MI, for plaintiffs-appellees.

David G. Edick, Asst. Atty. Gen. (argued and briefed), Thomas A. Kulick, Asst. Atty. Gen., Corrections Div., Lansing, MI, for defendants-appellants.

Before: MERRITT, Chief Judge; KEITH, KENNEDY, MARTIN, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, and DAUGHTREY, Circuit Judges; and CONTIE, Senior Circuit Judge.

MERRITT, Chief Judge, announced the judgment of the Court remanding the case to be dismissed, a judgment in which fourteen of the sixteen members of the *en banc* Court concur (Judges MERRITT, KENNEDY, MARTIN, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, DAUGHTREY and CONTIE). Chief Judge MERRITT delivered an opinion joined by ten members of the Court (Judges KENNEDY, MARTIN, MILBURN, GUY, NELSON, BOGGS, NORRIS, SUHRHEINRICH, SILER and DAUGHTREY). Judge CONTIE (pp. 1167–69), delivered a separate concurrence joined by seven members of the Court (Judges KENNEDY, MILBURN, RYAN, NORRIS, SUHRHEINRICH, SILER and BATCHELDER). Judge JONES (pp. 1169–74), joined by Judge KEITH, delivered a dissenting opinion.

MERRITT, Chief Judge.

The district court has denied the State's motions to vacate, modify or terminate a consent decree entered in 1981 governing parole procedures for state prisoners in Michigan. The federal consent decree, consisting of more than 100 sections and subsections, supplements state procedural regulations by enjoining the state to follow detailed procedures for the conduct of parole hearings and rehearings, for publishing parole information, for staffing prison parole units, for establishing and following criteria for making parole decisions and for creating inmate access to parole files. The basic questions in the present *en banc* appeal are questions of law: (1) whether a set of injunctions imposed by a consent decree may be dissolved if the old decree appears to be based on an earlier misunderstanding of the governing law; and (2) if so, whether the set of injunctions before us here should be dissolved for this reason. We conclude that the court below erred in declining to dissolve the injunctions in the consent decree. The continuing injunctive relief is no longer appropriate under existing federal law.

This seventeen year-old case has a long litigation history. Only a few of the facts are relevant. The legal principles to be applied separate the relevant facts from the mass of extraneous facts in the record. Accordingly, before outlining the pertinent factual and procedural history, we will outline briefly the legal standards in the two areas of law applicable to this case—the standards governing the termination or modification of consent decrees granting injunctive relief and the procedures required by federal due process governing state procedures for parole.

**I.**

In *Rufo v. Inmates of Suffolk County Jail*, —— U.S. ——, 112 S.Ct. 748, 116

L.Ed.2d 867 (1992), the Supreme Court recently revisited the standards applicable to modification and termination of consent decrees in institutional reform cases. Recognizing that there are now many such consent decrees continuing to operate under federal court supervision, the Court established a flexible set of standards for modifying such decrees. The Court in *Rufo* allowed the modification of a consent decree imposing injunctive relief against Boston prison officials. The Court changed its analysis from its earlier decision in *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). It rejected the idea that rules of *res judicata* are controlling, and also rejected a restrictive standard that termination or modification could only occur when the change of circumstances was "unforeseen and unforeseeable." Instead the Court held that modification may be ordered if a party has met "its initial burden by showing either a *significant* change in factual conditions or *in law.*" *Rufo,* — U.S. at —, 112 S.Ct. at 760 (emphasis added). A decision changing or clarifying the law will provide a basis for a modification if it demonstrates that the parties "based their agreement on a misunderstanding of the governing law." *Id.* at —, 112 S.Ct. at 763.

This flexible standard has an ancient lineage in our common law. It is the modern sequel of the Sixth Ordinance of *Bacon's Ordinances In Equity* written by Sir Francis Bacon as Lord Chancellor in 1618. The Sixth Ordinance authorized a court in equity to modify a decree in light of a change or clarification (called "control" in the ordinance) in an earlier judgment. "No decrees shall be made, upon pretense of equity, against the express provision of an act of parliament: nevertheless if the construction of such act of parliament hath for a long time gone one way in general opinion and reputation, and after by a later judgment have been controlled [modified or limited], then relief may be given upon a matter of equity for cases arising before said judgment; because the subject was in no default." 7 Bacon, Works 760 (Spedding Ed. 1879), as quoted in Note, 59 *Harv.L.Rev.* 957, 965 n. 52 (1946).

Bacon's principles generally provide that a court has continuing jurisdiction to terminate or modify an injunction and that an equitable remedy should be enforced only as long as the equities of the case require.

Second, on the question of federal due process standards governing state parole procedures, there was considerable confusion in the cases in the late 1970's when this class action was originally filed. The district court noted this confusion in its original opinion in this case in 1978. There were a number of Supreme Court and lower court opinions that could be interpreted to say that a state statute or regulation creating a purely procedural limitation concerning parole may also create a federal due process liberty interest or substantive right. The law at that stage of development was unclear. In 1978, some courts had held that federal due process imposed a requirement on state parole authorities to follow the federal court's interpretation of state procedural regulations. *See, e.g., Franklin v. Shields,* 569 F.2d 784, 800–801 (4th Cir.1977) (en banc), *cert. denied,* 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978).

This confusion existed in the Sixth Circuit prior to the holding of the Supreme Court in *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), that state statutes and regulations governing prison hearings do not create an independent federal due process liberty interest or right in the prisoner, and the holding of the Sixth Circuit in *Inmates of Orient Correctional Institute v. Ohio State Adult Parole Authority,* 929 F.2d 233 (6th Cir.1991), applying the *Olim* principle to state statutory procedural rights governing parole. After *Olim* and *Inmates,* it became clear that procedural statutes and regulations governing parole do not create federal procedural due process rights and that in the present case the legal theory and analysis upon which the consent decree was formulated was erroneous. The Michigan procedural limitations do not detract from the broad powers of the Michigan authorities to deny parole.[1] So long as the

---

1. The Michigan statute vesting discretion is Mich.Comp.Laws Ann. § 791.235, which states

in pertinent part: "(1) The release of a prisoner on parole shall be granted solely upon the initia-

parole discretion is broad, as in Michigan, "the State has not created a constitutionally protected liberty interest" by enacting procedural rules. *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747. The parole authorities of the State of Michigan may have been required to follow their own procedural statutes and regulations on parole as amplified in the consent decree as a matter of *state* law, but there is not now any viable legal theory by which Michigan state authorities are required to follow such procedural rules as a matter of *federal* due process.

A due respect for the doctrine of federalism, the structural principle by which we subdivide governmental power, discourages constitutionalizing state regulatory procedures. Otherwise federal courts would take over from state administrators and courts the interpretation and enforcement of a whole host of local procedural rules governing such local matters as zoning, probate, licensing, school discipline or public health, and states would be discouraged from laying down reasonable and useful rules to govern the conduct of their own affairs for fear that those rules would subject them to jurisdiction and penalties in federal courts.

The instant appeal came before the Court in May 1993. The defendants challenged two rulings of the district court which continued monitoring of the state's parole procedures and which rejected a Special Master's finding that the 1981 consent decree should be dissolved. At oral argument, the panel concluded that a conflict appears to exist between an earlier unpublished opinion in this case, *Sweeton v. Brown,* 944 F.2d 905 (Table), 1991 WL 181751 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1306, 117 L.Ed.2d 527 (1992) (*"Sweeton I"*), and the *Olim* and *Inmates* opinions. Without issuing an opinion, the panel recommended that the entire Court rehear this case. The Court agreed. It ordered the parties to file supplemental briefs, and it set the case for rehearing *en banc.*

## II.

Prisoners eligible for parole in the Michigan state prison system filed this class action in 1977. Early in the proceedings, the defendants moved to dismiss all of plaintiffs' constitutional claims. The motion was granted in part and denied in part. The court did not dismiss the count which alleged that the Michigan statutory and regulatory procedures for parole created a liberty interest protected by the Due Process Clause. In October 1979, the defendants made a second motion to dismiss, arguing again that no valid federal due process claim existed on the basis of state procedural regulations governing parole. This motion was also denied. These rulings were not appealed and at that time were probably not appealable as final judgments. Settlement negotiations ensued and eventually resulted in a consent decree on August 28, 1981.

Monitoring and enforcement of the consent decree continued for 36 months until defendants filed a motion to vacate, arguing again that no federal claim existed. This motion to vacate, filed on February 28, 1984, was based on two recent Supreme Court cases which arguably "changed" or "clarified" the law. *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). After briefing and oral argument, the court denied the motion to vacate.

In July 1985, the court terminated its monitoring. Over the next several months, however, class members began sending letters to the court complaining that the defendants were failing to comply with the judgment. In March 1987, a prisoner member of the class filed a *pro se* motion to enforce judgment. In response, the court ordered that new counsel be appointed to monitor the defendants' compliance on behalf of the class. After a hearing in June 1988, the court found that the defendants were not in compliance and reinstated court supervision.

In January 1990, the plaintiffs filed a report arguing that the defendants were in

---

tive of the parole board." The statute then lists a large number of factors to be taken into account

by the board.

continuing noncompliance. In March, the defendants responded with another motion to dismiss or to modify, asserting that the court lacked subject matter jurisdiction and that the decree was "void" under Fed.R.Civ.P. 60(b)(4). The district court entered an order in May 1990, finding substantial noncompliance, ordering renewed monitoring, and denying the motion to dismiss or modify. The defendants appealed these orders, which resulted in the 1991 opinion affirming the district court in *Sweeton I*. In 1992, the district court entered two more injunctive orders which extended the monitoring period and appointed an independent monitor. These orders resulted in the instant appeal.

### III.

Anglo–American courts have always had the inherent equitable power to modify consent decrees imposing ongoing injunctive relief. As previously stated, the party seeking a modification is not limited to showing a change in facts; it "may meet its initial burden by showing either a *significant* change in factual conditions or *in law*." *Rufo*, —— U.S. ——, 112 S.Ct. at 760 (emphasis added). The change in the law in this case is significant. *Olim* and *Inmates* make it clear that federal courts should no longer as a matter of federal due process seek to enforce purely procedural parole regulations. The foundation upon which the claim for injunctive relief was built has crumbled.

The plaintiffs ask us to consider other equitable factors. They maintain that they would be prejudiced if the court were to dissolve the injunction at this time. Plaintiffs argue that they chose not to pursue their claim that the state was acting in an "arbitrary and capricious" manner when they entered into the instant decree. They also argue that the defendants have acted in "bad faith" by not complying with the decree.

We find neither of these arguments persuasive. No basis in federal law exists for the injunctive relief imposed in this case. That Michigan parole authorities "arbitrarily" failed to follow their own state procedural standards could constitute a violation of state law but not federal law. The distinction between state and federal law must be clear-ly maintained. The "bad faith" or "unclean hands" argument is similarly unavailing. The record before us suggests confusion on all sides regarding the extent of the duties imposed by the consent decree. It does not suggest the type of egregious conduct that should bar dissolution of the injunctions here.

The Seventh Circuit has recently interpreted *Rufo* in a similar *en banc* case. The court observed:

> Now 16 years old, this case is making its third appearance in this court—and the parties' current dispute arises out of the conflicting decisions of the first two panels. We meet in banc to consider whether a district court should require a unit of state or local government to abide by a consent decree that does not serve any federal interest. The answer is No, and the injunction based on the parties' agreement therefore must be vacated.

*Evans v. City of Chicago*, 10 F.3d 474, 475 (7th Cir.1993) (en banc). As in *Evans*, there is no federal interest here. Injunctions may be modified "when the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Rufo*, —— U.S. ——, 112 S.Ct. at 762. Here, decisional law has changed so that the enjoined behavior, which once *might* have been a violation of federal law, is no longer a matter of federal law at all.

### IV.

In light of our decision based on *Rufo*, we need not reach the defendants' other defenses presented in this appeal, including the question of whether the court decree should be terminated based on compliance and the question of extent of the jurisdiction of the district court at various points in the past when it declined to dismiss the complaint or dissolve the set of injunctions created in the consent decree.

Injunctions are one of the law's most powerful weapons. Ongoing injunctions should be dissolved when they no longer meet the requirements of equity. The law changes and clarifies itself over time. Neither the doctrines of *res judicata* or waiver nor a proper respect for previously entered

judgments requires that old injunctions remain in effect when the old law on which they were based has changed. Accordingly, the judgment of the district court is reversed and the case is remanded to the court below with instructions to vacate the consent decree and dissolve the injunctions imposed by it.

CONTIE, Senior Circuit Judge, concurring.

Although the approach taken by the majority is not improper, in addition to the reasons stated in the majority opinion, I believe the case may also be dismissed for lack of subject matter jurisdiction.

Federal courts are courts of limited jurisdiction and are empowered to hear only such cases as are within the judicial power of the United States as defined in Article III, § 2 of the Constitution. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2103, 72 L.Ed.2d 492 (1982); *Cleveland Surgi–Center, Inc. v. Jones,* 2 F.3d 686, 691 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 696, 126 L.Ed.2d 633 (1994). Although a federal court has the power to determine whether it has jurisdiction over the parties and subject matter of a suit, if it is determined that the case does not involve a federal question, it must then be dismissed for lack of subject matter jurisdiction. *Insurance Corp. of Ireland, Ltd.,* 456 U.S. at 702, 102 S.Ct. at 2104.

In the present case, Judge Feikens, the original district court judge, did not find in 1978 that the court had jurisdiction over the parties and subject matter of the suit because the state of Michigan had created a federally protected liberty interest in its parole procedures which had been violated, but instead merely denied summary judgment on this issue and remanded for further factfinding. A factfinding hearing was never held. When the case was transferred, there was a misunderstanding about its procedural posture, and the court proceeded on the erroneous assumption that there had been a determination *on the merits* that the court had jurisdiction over the parties because the Due Process Clause of the Fifth Amendment had been violated. Thus, the consent decree was entered into in 1981 without a clear analysis about whether the federal court had the judicial power to intervene in the state of Michigan's parole procedures because the Due Process Clause of the Fifth Amendment had been violated.

Although initially the jurisdictional basis for such intervention was dubious, it became clear in 1983 with the Supreme Court's decision in *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) that the district court did not have the judicial authority to intervene, because the state of Michigan's parole procedures do not create a federally protected liberty interest. The Court in *Olim* stated that a state creates a protected liberty interest in a proscribed procedure only "by placing *substantive* limitations on official discretion," *id.* at 249, 103 S.Ct. at 1747 (emphasis added), and "an expectation of receiving [a particular kind of] process is not, without more, a liberty interest protected by the Due Process Clause." *Id.* at 250 n. 12, 103 S.Ct. at 1744 n. 12. In other words, a federal court has the judicial authority to intervene in enforcing state procedures only if there is a constitutional violation of a federally protected liberty interest. I do not believe this occurred in the present case for the reasons hereinafter set forth.

Based on the Supreme Court's statements in *Olim,* this court held in 1991 that Ohio law did not give Ohio prison inmates a federally protected liberty interest in being released on parole at a time related to their "on or after dates" set by the Ohio Adult Parole Authority. *Inmates of Orient Correctional Institute v. Ohio State Adult Parole Authority,* 929 F.2d 233, 235 (6th Cir.1991). This court in *Inmates* stated that state procedural requirements alone cannot establish a federally protected liberty interest, and violation of state regulations requiring a particular kind of parole hearing cannot violate the Due Process Clause absent some independent basis for finding a liberty interest that has been taken away. *Id.* at 237. In *Inmates,* this court examined the Ohio statute on parole and found no mandatory language creating an explicit presumption of entitlement to release on parole as of a particular date even though limitations were placed on the parole

board's discretion in granting parole. *Id.* at 236–37.

Similarly, in the present case, the Michigan statute at issue does not create an explicit entitlement to release on parole as of a particular date, but instead states, "The time of a person's release on parole granted in compliance with this act shall be discretionary with the parole board." MCLA § 791.234(5). There is no mandatory language in the Michigan statute; although the parole board must follow certain procedures in making a decision about parole, the final decision is completely discretionary. As the Supreme Court stated in *Olim*, if an official can make a decision with unfettered discretion, the fact that regulations require a particular kind of hearing before the administrator can exercise this discretion does not create a federally protected liberty interest. 461 U.S. at 249–50, 103 S.Ct. at 1747–48. In *Olim*, the Court analyzed one of its former decisions, *Meachum v. Fano*, in which it held that there is no federally protected liberty interest in a hearing before a prison transfer, which is a discretionary decision left up to prison officials. *Id.*, 461 U.S. at 248–49, 103 S.Ct. at 1747–48. The Court in *Meachum*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) emphasized that it would be error to interpret the Due Process Clause to create a liberty interest in procedures involving the day-to-day functioning of state prisons and "involve the judiciary in issues and discretionary decisions that are not the business of federal judges." *Id.* at 228–29, 96 S.Ct. at 2540. I believe that similar policy concerns apply in the present case.

In a more recent opinion, *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), the Supreme Court clarified its holdings in *Meachum* and *Olim*, stating that state regulations do not give rise to a federally protected liberty interest unless there are "specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome *must follow*." *Id.* at 463, 109 S.Ct. at 1910 (emphasis added). The proper analysis is to "examine closely the language of the relevant statutes and regulations" to discern the existence of "rele-

vant mandatory language that expressly requires the decisionmaker to apply certain substantive predicates," which then mandate a decision. *Id.* at 464, 109 S.Ct. at 1910.

In the present case, this analysis was never conducted in order to establish subject matter jurisdiction, and no such mandatory language exists. In 1985, a final monitor's report was submitted and court-supervised monitoring of Michigan's parole procedures was terminated by stipulated order of the district court. In spite of the statements made in the Supreme Court's 1983 decision in *Olim*, which indicated that a federal court does not have the jurisdictional authority to monitor parole procedures in the state of Michigan, the district court in the present case reinstituted monitoring of Michigan's parole procedures in 1988. Since then, there have been six more years of proceedings involving the federal supervision of the state of Michigan's parole procedures without an adequate jurisdictional basis for doing so.

Plaintiffs contend that by entering into the consent decree, defendants waived their right to contest subject matter jurisdiction. This argument has no merit. As the Supreme Court stated in *Insurance Corporation of Ireland, Ltd.*:

Subject-matter jurisdiction ... is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign. Certain legal consequences directly follow from this. For example, no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.... "[T]he rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, which requires this court, of its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record."

456 U.S. at 702, 102 S.Ct. at 2104 (citations omitted). As the court in *United States v. Siviglia*, 686 F.2d 832, 835 (10th Cir.1981), *cert. denied*, 461 U.S. 918, 103 S.Ct. 1902, 77 L.Ed.2d 289 (1983) stated, "Lack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a federal court by consent, inaction or stipulation.... A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking" (emphasis in original). *See also Basso v. Utah Power and Light Co.*, 495 F.2d 906, 909 (10th Cir.1974); *Burks v. Texas Co.*, 211 F.2d 443, 445 (5th Cir.1954).

To conclude, I concur with the majority opinion that the case should be remanded to the district court with instructions to vacate the consent decree and dissolve the injunctions imposed by it. However, for the aforementioned reasons, I prefer to dismiss the case for lack of subject matter jurisdiction.

NATHANIEL R. JONES, Circuit Judge, dissenting.

Because the majority opinion vacates the consent decree on an issue waived by Defendants, because it misapplies *Rufo v. Inmates of Suffolk County Jail*, — U.S. —, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), because it fails to recognize that the present case involves substantive rather than merely procedural regulations, and because it usurps the district court's discretion to exercise supplemental jurisdiction over this case, I respectfully dissent.

**I.**

The majority reasons that, because, under *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), and *Inmates of Orient Correctional Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233 (6th Cir.1991), "procedural statutes and regulations governing parole do not create federal procedural due process rights," it follows that no basis in federal law exists for the injunctive relief imposed in this case. *Ante* at 1164–65. The majority opinion ignores the fact that Defendants raised this argument in 1984. At that time, the district court rejected Defendants'

argument on its merits, and Defendants voluntarily chose not to appeal. This constitutes a waiver of the issue, and I feel it is improper for the majority to consider it here. *See Ackermann v. United States*, 340 U.S. 193, 197, 200, 71 S.Ct. 209, 211, 212, 95 L.Ed. 207 (1950) (holding that Rule 60(b)(6) relief from allegedly erroneous judgment was unavailable for petitioner who made "voluntary, deliberate, free, untrammeled choice ... not to appeal"); *Lorain NAACP v. Lorain Bd. of Educ.*, 979 F.2d 1141, 1151 (6th Cir.1992) (holding that when parties enter into consent decrees to avoid further litigation, the waiver of the right to litigate defenses must be respected), *cert. denied*, — U.S. —, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993); *Epp v. Kerrey*, 964 F.2d 754, 756 (8th Cir.1992) (declining to vacate a nine year old injunction against state officials in part because "the State slept on its rights when it failed to appeal the 1983 Injunction."); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir.1991) (issues raised in lower court and not raised on appeal are considered abandoned and not reviewable), *cert. denied*, — U.S. —, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992).

**II.**

The majority opinion misapplies *Rufo* in five different ways. First, in *Rufo*, the consent decree was before the Court on a Rule 60(b)(5) motion for relief from judgment. — U.S. at —, 112 S.Ct. at 756. However, in the present case the majority applies *Rufo* even though there is no Rule 60(b) motion pending, and even though the majority has taken no action to resurrect one of Defendants' earlier Rule 60(b) motions that is no longer pending. Rule 60(b) allows a court to grant relief from judgment only upon motion of a party. It follows that "the issue is not before this court or ripe for us to decide." *Johnson v. Robinson*, 987 F.2d 1043, 1050 (4th Cir.1993); *see also Hook v. State of Arizona Dept. of Corrections*, 972 F.2d 1012, 1017 (9th Cir.1992) ("[W]e refrain from addressing the Department's Eleventh Amendment argument until it has been raised in a Rule 60(b)(5)-(6) motion. Our restraint is supported by policies favoring the finality and binding effect of judgments and

requiring the party seeking relief from a final judgment to bear the burden of modifying it.").

Second, the majority opinion ignores the fact that *Rufo* is to be applied in the first instance by the district court rather than the reviewing court, and that our role is merely to review for abuse of discretion. *See, e.g., Rufo,* —— U.S. at ——, 112 S.Ct. at 765; *id.* (O'Connor, J., concurring) ("Determining what is 'equitable' is necessarily a task that entails substantial discretion, particularly in a case like this one, where the District Court must make complex decisions requiring the sensitive balancing of a host of factors.... Our deference to the District Court's exercise of its discretion is heightened where, as in this litigation, the District Court has effectively been overseeing a large public institution over a long period of time."); *Lorain NAACP,* 979 F.2d at 1147–48 (6th Cir.1992) ("We review a district court's modification of a consent decree under an abuse of discretion standard."); *Mackin v. City of Boston,* 969 F.2d 1273, 1277–78 (1st Cir.1992) (stressing that district court enjoys "a significant measure of discretion" in exercising its equitable power to modify or dissolve a consent decree in institutional reform litigation), *cert. denied,* —— U.S. ——, 113 S.Ct. 1043, 122 L.Ed.2d 352 (1993); *Epp,* 964 F.2d at 756 (declining to vacate an injunction that was probably moot because "the district court should be the first to address its current vitality on an adequate record.").[1]

Third, in *Heath v. DeCourcy,* 992 F.2d 630, 635 (6th Cir.1993), we stressed that the proper procedure in ruling on a motion to modify a consent decree under *Rufo* is to conduct a "complete hearing," allowing both parties to present evidence relevant to a *Rufo* analysis.

*See also Johnson,* 987 F.2d at 1050 (holding that before a court may modify a consent decree, the court must, at minimum, (1) provide specific notice that it is contemplating making the changes, (2) allow the parties an opportunity to present evidence on the need for the changes, and (3) issue specific findings that support a determination that modification is warranted) (citing *United States v. Western Elec. Co.,* 894 F.2d 430, 435, 436 & 437 n. 12 (D.C.Cir.1990)). However, in the present case the majority vacates the consent decree on the basis of *Rufo* law without giving notice to Plaintiffs that it was contemplating such an action, without providing a hearing on whether *Rufo* applies, without requiring Defendants to present evidence in support of their position, and without providing an opportunity for the plaintiffs to contradict Defendants' evidence.

Fourth, *Rufo* requires as a condition to modifying a consent decree that there be a significant change in circumstances warranting revision of the decree. —— U.S. at ——, 112 S.Ct. at 760. The majority opinion states that *Olim* and *Inmates of Orient Correctional Institute*—which together hold that *"procedural* statutes and regulations governing parole do not create federal procedural due process rights," *ante* at 1164 (emphasis added)—constituted a significant change in the law governing this case for purposes of applying *Rufo. Ante* at 1166. However, *Olim* and *Inmates* did not so much *change* the relevant law as they merely *clarified* it.[2] For example, in *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 12–14, 99 S.Ct. 2100, 2103, 2106–07, 60 L.Ed.2d 668 (1979), the Court held that due process protection applies to parole only if state statutes and

---

1. I acknowledge, of course, that courts of appeals have the inherent power to resolve issues insofar as their resolution has been raised and briefed by the parties, where doing so may materially assist in the advancement of the litigation upon remand. *See Firestone v. Galbreath,* 25 F.3d 323, 326 n. 6 (6th Cir.1994); *Pinney Dock & Transport Co. v. Penn Central Corp.,* 838 F.2d 1445, 1461 (6th Cir.1988). However, it is well-settled that this power should be exercised only under exceptional circumstances that the majority does not attempt to invoke in the instant case.

*See Firestone,* 25 F.3d at 326 n. 6; *Pinney Dock & Transport Co.,* 838 F.2d at 1461. Moreover, in this case, the majority raises the *Rufo* issue *sua sponte,* and the parties have not had the opportunity to brief it.

2. Although the majority characterizes *Olim* and *Inmates* as manifesting a change in the law, *ante* at 1166, this finding is belied by the majority's own observation that these cases represent a mere clarification of the relevant law, *see ante* at 1164–1165.

regulations expressly limit the exercise of discretion such that an inmate qualified under state law has a "legitimate claim of entitlement" to parole. That *Olim* did not announce a significant change in the law is especially true in the Sixth Circuit, for *Olim* cites a Sixth Circuit case in support of the proposition that "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." 461 U.S. at 250 n. 12, 103 S.Ct. at 1748 n. 12 (citing, *inter alia, Bills v. Henderson,* 631 F.2d 1287, 1298–99 (6th Cir.1980)). The *Rufo* Court flatly rejected the view that a mere clarification of the law would, "in and of itself, provide a basis for modifying a decree.... To hold that a clarification in the law automatically opens the door for relitigation of the merits of every affected consent decree would undermine the finality of such agreements and could serve as a disincentive to negotiation of settlements in institutional reform litigation." — U.S. at —, 112 S.Ct. at 763. Rather, a clarification of the law will support modification only "if the parties had based their agreement on a misunderstanding of the governing law." *Id.* In the present case, however, neither Defendants nor the majority offer any argument to the effect that the underlying agreement was based on a misunderstanding of the governing law, nor does the record indicate any such misunderstanding. Thus, the majority has no basis for concluding that *Olim* and *Inmates* constituted a significant change in the law sufficient under *Rufo* to invoke a modification of the consent decree.

Finally, contrary to the *Rufo* Court's instructions, the majority is silent as to whether complete vacation is the only option, or whether some other less invasive modification might have been more "suitably tailored to the changed circumstances." *Rufo,* — U.S. at —, 112 S.Ct. at 763; *id.* at —, 112 S.Ct. at 764 (holding that "[a] proposed modification should not strive to rewrite a consent decree so that it conforms to the constitutional floor," and that a consent decree "may be reopened only to the extent that equity requires.").

### III.

The majority opinion simply assumes that Plaintiffs seek only to enforce "purely proce-

dural parole regulations." *Ante* at 1166. However, the state regulations presently at issue require that parole candidates receive, *inter alia:* (1) access to files and disclosure of pertinent information; (2) uniform treatment under written guidelines; and (3) timely release once a favorable parole decision is made. These requirements are significantly more substantive than the rule pertaining to the mere composition of a committee that allegedly was violated in *Olim.* They are important in and of themselves, and not merely as part of the process leading to a determination of parole. Thus, it does not follow from *Olim* that there were no substantive liberty interests created by the regulations at issue in the present case.

In my opinion, *Olim* is indeed inapposite; the regulations presently at issue do give rise to liberty interests protected under the due process clause of the Constitution. After all, no one doubts that the Freedom of Information Act, 5 U.S.C. § 552, created a substantive right of access to information; Michigan's regulations pertaining to access to information for parole candidates are analogous.

Nevertheless, one does not need to agree with this proposition in order to recognize that the majority's analysis is inadequate. One needs only to admit that the question is controversial or arguable. If so, then one cannot assume that the 1981 consent decree was based on a misunderstanding of the law. One cannot assume that Defendants would not enter into the same settlement agreement if the case had been brought for the first time today. One cannot assume, before Plaintiffs have ever enjoyed even one day in court on the merits of the case, that Plaintiffs ultimately would not have won on the merits but for the consent judgment.

That the issue is controversial or arguable is obvious. Few distinctions in law are as murky as our distinction between substance and procedure. The Supreme Court has long acknowledged that "[t]he line between 'substance' and 'procedure' shifts as the legal context changes," and that there is a wide range of "matters which, though falling within the uncertain area between substance and

procedure, are rationally capable of classification as either." *Hanna v. Plumer*, 380 U.S. 460, 471, 472, 85 S.Ct. 1136, 1144, 1145, 14 L.Ed.2d 8 (1965). Since *Hanna*, the Court has commented that: "the Court's decisions in this area point up the impossibility of laying down a precise rule to distinguish 'substance' from 'procedure,'" *St. Louis Southwestern Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303 (1985) (quoting *Brown v. Western R. of Alabama*, 338 U.S. 294, 296, 70 S.Ct. 105, 106, 94 L.Ed. 100 (1949)); "the distinction between substance and procedure might sometimes prove elusive," *Miller v. Florida*, 482 U.S. 423, 433, 107 S.Ct. 2446, 2453, 96 L.Ed.2d 351 (1987); and "we are loath to enter the logical morass of distinguishing between substantive and procedural rules," *Mistretta v. United States*, 488 U.S. 361, 392, 109 S.Ct. 647, 665, 102 L.Ed.2d 714 (1989).

In light of the lack of precision of the distinction upon which the majority opinion is grounded, in light of this distinction's dependence upon context, and in light of the broad 'grey' area that exists between the category of "pure substance" and that of "pure procedure," in which the distinction is essentially meaningless, the majority's presumption that the regulations at issue are purely procedural is inappropriate. Without this presumption, however, if it is merely questionable whether Plaintiffs could prevail on the merits if they had only been granted the opportunity to have a day in court, it follows that the consent decree ought to be left intact.

## IV.

Also overlooked is the doctrine of supplemental jurisdiction, formerly known as "pendent jurisdiction," set forth in 28 U.S.C. § 1367.[3] The majority recognizes that the district court had original jurisdiction over the present case and that issues of state law remain. *See ante* at 1165. It is apparent that the issues of state law form part of the same case or controversy as the federal question, for both arise from Defendants' failure to follow particular state regulations. *See, e.g., White v. County of Newberry*, 985 F.2d 168 (4th Cir.1993) (holding that, in order for state claim to be part of the same case or controversy as federal claim, "[t]he claims need only revolve around a central fact pattern."). It follows that the district court has supplemental jurisdiction over the remaining state law claims.

Under § 1367(c)(3), the district court has discretion to decide whether or not to exercise its supplemental jurisdiction over Plaintiffs' state law claims. *See also Noble v. White*, 996 F.2d 797, 799 (5th Cir.1993) ("District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed.... We do not lightly disturb a district court's § 1367(c)(3) determination."); *Landefeld v. Marion General Hosp.*, 994 F.2d 1178, 1182 (6th Cir.1993) (holding that district court's decision to grant supplemental jurisdiction is discretionary, and that we "review only for abuse of discretion."). The Practice Commentary to § 1367 notes that "if the dismissal of the main claim occurs late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair." *See also Landefeld*, 994 F.2d at 1182 ("A district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."); *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir.1993) ("In making its determination [whether to exercise supplemental jurisdiction], the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)); *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1309 (9th Cir.

---

**3.** Section 1367(a) provides, in pertinent part: [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....

1992) (holding that, in deciding whether to retain supplemental jurisdiction after dismissal of federal claims, district courts should consider the factors of "economy, convenience, fairness, and comity": "Our circuit frequently has upheld decisions to retain pendent claims on the basis that returning them to state court would be a waste of judicial resources."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993).

Applying these considerations to the present case, in which the time, effort, and money expended in reaching, enforcing, or challenging the consent decree over the past 17 years has been substantial indeed, given the opportunity, the district court could exercise its supplemental jurisdiction and decide the fate of the consent decree on the basis of state law alone. Thus, but for the majority's instruction to vacate, with which I disagree, the district court could have found that the state claims alone provide a sufficient basis for keeping the consent decree alive, or for modifying the decree in a way less invasive than vacating it altogether.

## V.

For the most part, the foregoing discussion does not apply to Judge Contie's concurring opinion. Because eight out of the sixteen judges on the *en banc* court conclude that the present case should be dismissed for lack of subject matter jurisdiction, I feel compelled to address the views of the concurring judges.

The concurring opinion reasons that (1) under *Olim,* Michigan's parole procedures do not create a federally protected liberty interest, and (2) without such an interest, there is no federal question in the present case. *See* concurring opinion *ante* at 1167. From these premises, it concludes that there is no federal subject matter jurisdiction over the present case.

Setting aside my disagreements with the two premises as stated earlier, the conclusion regarding subject matter jurisdiction simply does not follow. Federal subject matter jurisdiction lies so long as the complaint is drawn so as to seek recovery directly under the Constitution or laws of the United States,

unless the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *see also Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 70, 98 S.Ct. 2620, 2628, 57 L.Ed.2d 595 (1978) ("For purposes of determining whether jurisdiction exists under § 1331(a) .... the test is whether 'the cause of action is *so patently without merit* as to justify the court's dismissal without jurisdiction.' ") (quoting *Hagans v. Lavine,* 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974)); *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974) (holding that the test is whether right claimed is "so insubstantial, implausible, foreclosed by prior decision of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."). Thus, where a plaintiff claims that state laws give rise to a federally protected liberty interest and where the claim is not patently immaterial or wholly insubstantial or frivolous, even if upon analysis it turns out that the plaintiff's claim is incorrect, this does not imply that there was no subject matter jurisdiction in the first place. Rather, it implies that the plaintiff loses his case *on the merits.*

Applying *Bell* and its progeny to the present case, it is clear that Plaintiffs' complaint alleged the existence of a federally protected liberty interest. *See* J.A. at 41 (complaint). Thus, under *Bell,* the only way that subject matter jurisdiction would not lie in this case would be if Plaintiffs' contention were patently immaterial or wholly insubstantial or frivolous. There can be no doubt that Plaintiffs' contention exceeds at least this minimal threshold; even the concurring judges do not contend that Plaintiffs' arguments were so insubstantial, implausible, or frivolous as to be *patently* without merit.

## VI.

Because Defendants have waived the *Olim* "change of law" issue, because there is no Rule 60(b) motion pending, and because the district court does have subject matter juris-

diction over this case, I would leave the consent decree intact, and remand this matter to the original assigned panel to consider the propriety of the district court's Orders of March 12 and April 12, 1992. Alternatively, given that the majority resurrects the *Olim* issue, I would remand the matter to allow the district court to apply the *Rufo* doctrine in the first instance. Alternatively, given that the majority opinion has the effect of invading the district court's province with regard to applying *Rufo*, I would at least apply *Rufo's* two-step test in the way that the Supreme Court intended, by first conducting a hearing to allow the parties to argue whether circumstances have so changed that, under *Rufo*, modification of the consent decree is appropriate, and then, if it were found that they had, by carefully tailoring the modification to the changed circumstances. Along the way, I would address Plaintiffs' argument that *Olim* is inapposite insofar as the present case is based upon substantive rather than merely procedural law. Finally, if the court were to find that Plaintiffs' federal claim is somehow lacking, a remand would be in order for the district court to consider whether to exercise supplemental jurisdiction over the state law claims.

For the foregoing reasons, I respectfully dissent.