NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0432n.06
Filed: June 22, 2006

No. 05-5895

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

DEJA VU OF NASHVILLE, INC., *et al.*,

    Plaintiffs-Appellants,

v.

METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY,

    Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

_____/

Before:    MARTIN, MOORE, and ROGERS, Circuit Judges.

    BOYCE F. MARTIN, JR., Circuit Judge. This case has been before this Court several times. *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377 (6th Cir. 2001) [hereinafter *Deja Vu I*]. Last time it was here, the Court remarked that "'deja vu' provides a particularly appropriate label for this second appeal." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 421 F.3d 417, 418 (6th Cir. 2005) [hereinafter *Deja Vu II*]. This time, it's "like deja vu all over again." YOGI BERRA, *available at* http://www.quotationspage.com/quote/27218.html (last accessed June 20, 2006); *see also* JOHN FOGERTY, *Deja Vu (All Over Again)*, *on* DEJA VU ALL OVER AGAIN (Geffen Records 2004). Before us now is Deja Vu's appeal from the district court's decision dissolving a permanent injunction which had enjoined the enforcement of Metropolitan Code of Laws Chapter 6.54 "Sexually Oriented

Businesses" ("the Ordinance"), and dismissing the case. The issue on appeal is whether it was proper for the district court to have done so. We AFFIRM.

## I.

There is quite a history to this case. It has been described extensively in this Court's previous opinions, *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377 (6th Cir. 2001) [hereinafter *Deja Vu I*], and *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 421 F.3d 417, 418 (6th Cir. 2005) [hereinafter *Deja Vu II*]. In short, the Metro Nashville government enacted Chapter 6.54 on August 19, 1997. It required "sexually oriented" businesses to obtain licenses and performers to obtain permits. Deja Vu sought to enjoin the Ordinance by arguing that it was unconstitutional for not providing prompt judicial review. The district court agreed, and on December 8, 1997, entered a preliminary injunction. The government amended the Ordinance and, approximately one year later, the injunction was dissolved. In response, on December 17, 1998, Deja Vu filed a second motion for a preliminary injunction. The government responded by notifying the court of ninety-two amendments to the Ordinance since it was enacted. The district court granted Deja Vu's motion on October 4, 1999, enjoining enforcement of the Ordinance in its entirety. Shortly thereafter, following a hearing on December 21, 1999, the preliminary injunction was converted into a permanent injunction.

The government amended the Ordinance and at the same time appealed to this Court. In *Deja Vu I*, this Court affirmed the district court's decision enjoining enforcement of the amended Ordinance, holding that the judicial review provision, *i.e.*, Tennessee's common law writ of certiorari, was constitutionally inadequate and that the statutory definition of "sexually oriented"

was overly broad. The Supreme Court denied certiorari, 535 U.S. 1073, at which time additional

amendments of the Ordinance went into effect. The amendments narrowed the definition of

"sexually oriented," and the State altered the common law writ to require prompt judicial review in

First Amendment cases. On February 23, 2005, the government filed a motion to dissolve the

permanent injunction. The government argued that the Ordinance is now constitutional under *City*

*of Littleton, Colorado v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004), and complied with *Deja Vu I*.

*See Deja Vu I*, 274 F.3d at 403 ("Upon remand, the district court should maintain the injunction until

Metropolitan Nashville satisfies it that the constitutional problems with the Ordinance's definition

of 'sexually oriented' and its judicial review procedures have been corrected."). The district court

agreed with the government and entered an Order dissolving the injunction on April 29, 2005. The

court found that the amended definition of "sexually oriented" "is not overbroad and complies with

the First Amendment."[1] Further, the court found that the judicial review provision "does guarantee

prompt judicial review as required by the First Amendment," and "Metro has satisfied this Court that

the constitutional problems with its judicial review procedures have been corrected."[2] The district

---

[1]The Ordinance now defines "sexually oriented" as follows:

"Sexually oriented" when used to modify film, movie, motion picture, videocassette, slides, or other photographic reproductions shall mean a film, movie, motion picture, videocassette, slides, or other photographic reproductions that regularly depicts material which is distinguished or characterized by an emphasis on matter depicting or describing "specified sexual activities or specified anatomical areas" offered for observation by the patron(s) on the premises of a sexually oriented business.

Metro Code of Laws § 6.54.010(Y).

[2]The relevant statute now provides:

court further concluded that the previous injunction hearing had been consolidated with a trial on the merits, and therefore further litigation, if it were to occur, would need to be the result of the filing of a new case by Deja Vu. Nine days prior to the district court's decision dissolving the injunction, this Court heard oral argument in *Deja Vu II,* which involved the district court's award of attorney fees to Deja Vu. This is how it stood when this Court affirmed the district court's award of $536,535.22 in attorney fees in *Deja Vu II*. The appeal from the district court's order dissolving the permanent injunction is now before this Court. Deja Vu essentially makes two arguments. First, it argues that the district court improperly dissolved the injunction by not analyzing the issue under Federal Rule of Civil Procedure 60(b). Second, Deja Vu argues that the district court improperly dismissed the case because Deja Vu never received a trial on its claims.

## II.

### A. *Dissolution of the Injunction*

"A party is entitled to a permanent injunction if it can establish that it suffered a constitutional violation and will suffer 'continuing irreparable injury' for which there is no adequate remedy at law." *Women's Medical Professional Corp. v. Baird*, 438 F.3d 595, 602 (6th Cir. 2006) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998)). In evaluating a

---

If the final decision of a board or commission revokes, suspends, or denies a license or permit that is required prior to engaging in conduct protected by the First Amendment to the Constitution of the United States, and either the petitioner or the respondent requests an expedited hearing, the court shall immediately grant the writ of certiorari, and shall hear the matter and issue its decision within forty (40) days of the court granting the writ of certiorari.

Tenn. Code Ann. § 27-9-111(e).

district court's grant of a permanent injunction or dissolution of a permanent injunction previously granted, we review its factual findings for clear error and its legal conclusions de novo. *Id.* The scope of injunctive relief is reviewed under an abuse of discretion standard. *Id.*

Even before the Federal Rules of Civil Procedure were enacted, the prospective features of injunctions were subject to modification by the district court. *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) (noting that "a continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need"). Now that the Rules have been enacted, modifications or dissolution of injunctions must take place under Rule 60(b). *Rufo v. Inmates of Suffolk Jail*, 502 U.S. 367, 380 (1992) (noting that "the prospective effect of such a judgment or decree will be open to modification where deemed equitable under Rule 60(b)"). In *Rufo*, the Court held that "Rule 60(b)(5) provides that a party may obtain relief from a court order when 'it is no longer equitable that the judgment should have prospective application,' not when it is no longer convenient to live with the terms of a consent decree. Accordingly, a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Id.*

Thus, "if a party seeks to have a decree set aside entirely, he or she has to show that the decree has served its purpose, and there is no longer any need for the injunction." MOORE'S FED. PRACTICE § 60.47[2][c] (3d ed. 2005); *see also Board of Education of Oklahoma City v. Dowell*, 498 U.S. 237, 247 (1991) (without referencing Rule 60(b)(5), holding that the desegregation decree should be dissolved when "the purposes of the desegregation litigation had been fully achieved"); *Nicacio v. INS*, 797 F.2d 700, 706 (9th Cir. 1985) ("[A] court which issues an injunction retains

jurisdiction to modify the terms of the injunction if a change in circumstances so requires."). In

*Sweeton v. Brown*, 27 F.3d 1162 (6th Cir. 1994) (en banc), this Court described a "flexible standard"

having "ancient lineage in our common law," and stated that Sir Francis Bacon's "principles

generally provide that a court has continuing jurisdiction to terminate or modify an injunction and

that an equitable remedy should be enforced only as long as the equities of the case require." *Id.* at

1164. In ordering the injunctions dissolved, we focused on the fact that "[t]he foundation upon

which the claim for injunctive relief was built has crumbled," and concluded that "[n]o basis in

federal law exists for the injunctive relief imposed in this case." *Id.* We then stated:

> Injunctions are one of the law's most powerful weapons. Ongoing injunctions
> should be dissolved when they no longer meet the requirements of equity. The law
> changes and clarifies itself over time. Neither the doctrines of *res judicata* or waiver
> nor a proper respect for previously entered judgments requires that old injunctions
> remain in effect when the old law on which they were based has changed.

*Id.* at 1166-67.

Consistent with these standards, in *Deja Vu I*, this Court stated that "[u]pon remand, the

district court should maintain the injunction until Metropolitan Nashville satisfies it that the

constitutional problems with the Ordinance's definition of 'sexually oriented' and its judicial review

procedures have been corrected." 274 F.3d at 403. Following the government's motion to dissolve

the injunction, the district court held that the constitutional problems with the Ordinance had been

rectified.[3] We agree.

---

[3]It is unclear to us why the district court stated that this Court's dictate to maintain the injunction until the constitutional problems were resolved, "makes Plaintiffs' Rule 60 argument meritless." It appears that the district court then essentially applied the standards from Rule 60(b)(5) — which is what this court's "dictate" instructed the district court to do. The district court's statement notwithstanding, it properly went on to conclude that maintenance of the injunction should

> ### 1. *Prompt Judicial Review*

The Tennessee statute that modified the discretionary common law writ of certiorari now states:

> If the final decision of a board or commission revokes, suspends, or denies a license or permit that is required prior to engaging in conduct protected by the First Amendment to the Constitution of the United States, and either the petitioner or the respondent requests an expedited hearing, the court shall immediately grant the writ of certiorari, and shall hear the matter and issue its decision within forty (40) days of the court granting the writ of certiorari.

Tenn. Code Ann. § 27-9-111(e). Following the Supreme Court's decision in *Z.J. Gifts*, the judicial review statute clearly complies with the First Amendment's requirement of a prompt judicial decision. In *Z.J. Gifts*, the Supreme Court found that "Colorado's ordinary 'judicial review' rules offer adequate assurance, not only that *access* to the courts can be promptly obtained, but also that a judicial *decision* will be promptly forthcoming." 541 U.S. at 781 (emphases in original); *see also id.* at 782 ("[O]rdinary court procedural rules and practices, in Colorado as elsewhere, provide reviewing courts with judicial tools sufficient to avoid delay-related First Amendment harm."). Thus, "the First Amendment does not require special 'adult business' judicial review rules." *Id.* This holding, of course, applies where an ordinance "does not seek to *censor* material," but rather is a licensing scheme that "applies reasonably objective, nondiscretionary criteria unrelated to the content of the expressive materials that an adult business may sell or display." *Id.* at 783; *see also Deja Vu of Cincinnati, L.L.C. v. Union Township Bd. of Trustees*, 411 F.3d 777, 787-88 (6th Cir. 2005) (en banc). The licensing and permit criteria, M.C.L. § 6.54.050, 6.54.080, are reasonably

---

no longer have prospective application, which is consistent with Rule 60(b)(5).

objective, nondiscretionary criteria, such that the more relaxed standard of *Z.J. Gifts* would apply as opposed to the more stringent standard from *Freedman v. Maryland*, 380 U.S. 51 (1965). *See Deja Vu of Cincinnati*, 411 F.3d at 787 (noting that the Court in *Freedman* was confronted with a statute employing subjective standards where a denial of a license would likely result in complete censorship and concluding that *Freedman*'s "special judicial review rules" do not apply to adult business licensing schemes).[4] Thus, pursuant to this standard, the government's expedited review provision complies with the First Amendment.

### 2. Definition of "Sexually Oriented"

In *Deja Vu I*, we held that the Ordinance's definition of "sexually oriented" was unconstitutionally overbroad. 274 F.3d at 387. "A law is overbroad under the First Amendment if it 'reaches a substantial number of impermissible applications' relative to the law's legitimate sweep." *Id.* (quoting *New York v. Ferber*, 458 U.S. 747, 771 (1982)). As this Court has noted, the doctrine is designed "to prevent the chilling of future protected expression." *Id.* (citation omitted).

The definition reviewed in *Deja Vu I* defined "sexually oriented" as "any exhibition of any motion pictures, films, or videos depicting 'specified sexual activities' or 'specified anatomical areas.'" M.C.L. § 6.54.070(Y) (1999) (amended). "'Specified anatomical areas'" included '[l]ess than completely and opaquely covered' buttocks and female breasts." *Deja Vu I*, 274 F.3d at 377 (quoting M.C.L. § 6.54.010(BB)). Based on these definitions, this Court concluded that "any movie

---

[4]Even if we were to conclude that *Freedman* still applied to Metro Nashville's Ordinance, the Ordinance is still constitutional. Here, there are "special judicial review" rules with respect to First Amendment cases that will guarantee a prompt judicial decision. Thus, the Ordinance passes constitutional muster under both *Z.J. Gifts* and *Freedman*.

or video featuring a single shot of a person's nude or partially-covered buttocks or a woman's partially covered breast is a 'sexually oriented' film under the Ordinance, irrespective of whether the film's content constitutes 'adult entertainment' or causes the type of secondary effects . . . that Metropolitan Nashville seeks to regulate." *Id.* at 377-78. Thus, "[b]ecause this definition could apply to a range of expression that does not cause the secondary effects that the Ordinance was aimed to prevent, it is overbroad." *Id.* at 388.

Since this Court's ruling in *Deja Vu I*, the definition of "sexually oriented" has been amended and is now considerably narrower. It now reads:

> "Sexually oriented" when used to modify film, movie, motion picture, videocassette, slides, or other photographic reproductions shall mean a film, movie, motion picture, videocassette, slides, or other photographic reproductions that regularly depicts material which is distinguished or characterized by an emphasis on matter depicting or describing "specified sexual activities or specified anatomical areas"[5] offered for observation by the patron(s) on the premises of a sexually oriented business.

Metro Code of Laws § 6.54.010(Y).

The definition of "sexually oriented business," which was not found to be constitutionally infirm in *Deja Vu I*, states: "Any commercial establishment which for a fee or incidentally to another service, regularly presents material or exhibitions distinguished or characterized by an emphasis on matter depicting, describing or relating to 'specified sexual activities' or 'specified anatomical areas' as defined in this section for observations by patrons therein." M.C.L. § 6.54.010(Z). In *Deja Vu I*, we noted that if this definition stood alone, it would be overbroad, as it would include a hotel that offers its guests access to an adult cable channel, but found that the Ordinance avoided this problem

---

[5]The definition of "specified sexual activities" includes sexual intercourse and fondling of buttocks or breast. *See* M.C.L. § 5.43.010(CC).

by having four additional subsections, one of which must be satisfied, in order to fall within the Ordinance. These four subsections define "sexually oriented bookstore," "sexually oriented nightclub," "sexually oriented theater," and "sexually oriented video store." M.C.L. § 6.54.010(Z)(1)-(4). Thus, we held that the requirement of being a "sexually oriented business" "narrows the Ordinance's application to those theaters that regularly present material distinguished or characterized by an emphasis on sex acts or particular body parts. Again, reading the definitions together saves the parts from overbreadth." *Deja Vu I*, 274 F.3d at 388.

The government took its cue from this decision by narrowing its definition of "sexually oriented" to require that the activities be "offered for observation by the patron(s) on the premises of a sexually oriented business." M.C.L. § 6.54.010(Y). The definition was also narrowed such that it no longer applies to "*any* exhibition of *any* motion pictures, films, or videos depicting 'specified sexual activities' or 'specified anatomical areas'" M.C.L. § 6.54.010(Y) (1999) (amended) (emphases added), but rather, now applies only to those that "regularly depict material which is distinguished or characterized by an emphasis on matter depicting or describing 'specified sexual activities or specified anatomical areas.'" M.C.L. § 6.54.010(Y). The district court found that these two amendments cured the constitutional infirmities. We agree. None of this Court's concerns from *Deja Vu I* remain under the current definition. The definition means that only those activities that regularly depict specified sexual activities or anatomical areas and that occur on the premises of a sexually oriented business will be regulated. Our previous concerns involving, as an example, a hotel that offers its guests an adult cable channel, no longer remain under this narrowed language.

Moreover, Deja Vu did not discuss overbreadth in its final brief or reply brief or allege that the definition was still unconstitutional.

### B.    Dismissal of the Case

Deja Vu also argues that it was improper for the district court to dismiss the case because Deja Vu never received a trial on the merits of its constitutional challenges. In 1999, however, the district court entered a permanent injunction following a hearing on December 21. A permanent injunction is granted only after a trial on the merits. MOORE'S FED. PRACTICE § 65.05[3] (3d ed. 2005); *see also Kallstrom*, 136 F.3d at 1067 ("Where the plaintiff establishes a constitutional violation after a trial on the merits, the plaintiff will be entitled to permanent injunctive relief upon showing 1) a continuing irreparable injury if the court fails to issue the injunction, and 2) the lack of an adequate remedy at law."); *see also Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (to justify permanent injunctive relief, plaintiff must show actual success on the merits); *Peabody Holding Co. v. Costain Group, PLC*, 813 F. Supp. 1402, 1414 (E.D. Mo. 1993) ("The standard for determining whether a permanent injunction should issue is essentially the same as the standard for a preliminary injunction, except that the court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits.").

The district court's memorandum and analysis with regard to Deja Vu's motion for a preliminary injunction was incorporated into the district court's order making the preliminary injunction permanent. In that memorandum, the district court addressed what appears to be all of Deja Vu's challenges to the Ordinance, including the secondary effects argument that Deja Vu now claims it was never able to litigate. It was able to argue this point at the preliminary injunction

stage; the district court just rejected its argument and then entered a final judgment. Whether the district court correctly rejected Deja Vu's claims appears not to be challenged at this stage; rather, Deja Vu argues that it never had the opportunity to raise its secondary effects argument. This claim is refuted by the district court's treatment of the issue in its Memorandum.

Finally, all courts have been proceeding as if Deja Vu had raised all of its claims. The district court specifically stated as much, as did this Court in *Deja Vu I*. 274 F.3d at 386 (noting that following the dissolution of the first preliminary injunction, "[t]he plaintiffs also moved for another preliminary injunction, raising all of their constitutional challenges to the Ordinance"). The district court also specifically ruled that the record was closed in 1999 when it granted the permanent injunction and made a final ruling on the merits.[6] Finally, in *Deja Vu I*, we noted that "[t]he parties agree that Metropolitan Nashville validly enacted the Ordinance. Additionally, Metropolitan Nashville's stated interests in reducing crime, open sex, and the solicitation of sex are substantial." *Deja Vu I*, 274 F.3d at 392.[7] Deja Vu's only recourse, if it wishes to challenge any unsettled aspects of the current statute, is to file a new case in district court.

---

[6]The Order, in relevant part, states: "In this action, as stated on the record at the hearing on December 21, 1999, it appears that no further or additional relief is sought beyond that which has been granted by the preliminary injunction. The preliminary injunction heretofore issued is herewith made a permanent injunction. Accordingly, the defendants are permanently enjoined from enforcing Chapter 6.54 of the Metropolitan Code. The applications for interim attorneys' fees shall be deemed final applications for fees in favor of the prevailing parties as of the conclusion of this litigation by the entry of this order. The entry of this order shall constitute the final judgment in this action." JA 557-58 (footnotes omitted).

[7]We also "we decline[d] to tie the hands of local governments by extending *City of Paducah* [*v. Investment Entm't, Inc.*, 791 F.2d 463 (6th Cir.1986)]*'s* reasoning to those regulations [such as the one before us] aimed only at redressing the secondary effects of the sex entertainment industry." *Deja Vu I*, 274 F.3d at 393.

**III.**

For the foregoing reasons, we AFFIRM the district court's order dissolving the permanent injunction and dismissing the case.